**WILDWOOD PARK COMMUNITY ASSOCIATION et al., Appellants (Petitioners Below),**

v.

**The FORT WAYNE CITY PLAN COMMISSION et al., Appellees (Respondents Below).**

No. 3–578A124.

Court of Appeals of Indiana, Third District.

Oct. 25, 1979.

Rehearing Denied Nov. 13, 1979.

Ralph R. Blume, Stanley A. Levine, Fort Wayne, for appellants.

Clifford E. Simon, Jr., Fort Wayne, for The Fort Wayne City Plan Commission.

Harry W. Scott, Jay M. De Voss, Decatur, Richard E. Beers, Fort Wayne, for all other appellees.

STATON, Judge.

On January 25, 1977, the various owners of 106.6 acres of real estate located near the intersection of highways 14 and 24 in Fort Wayne, Indiana, filed an application for a "Shopping Center Permit" with that municipality's Plan Commission. In their application, the landowners sought permission for the proposed construction of "Lakewood Shopping Center" on their property. After the Plan Commission had conducted a public hearing on the application, its members voted to grant the permit to build the shopping center.

Various neighborhood residents, together with the Wildwood Park Community Association (hereinafter collectively referred to as "Wildwood"), an organization generally comprised of residents of the area surrounding the property to be used as a shopping center, sought review of the Plan Commission's decision by filing a writ of certiorari in the Allen County Circuit Court. Pursuant to the court's issuance of the writ, the Plan Commission tendered to the court a transcript of the evidence given at public hearing. Based on the transcript of evidence, as well as additional testimony which was presented at a separate hearing on the matter, the judgment of the court affirmed the granting of the permit by the Plan Commission.

Wildwood here appeals from that judgment, and raises the following issues for our review: [1]

1. Wildwood has also contended that the Plan Commission's grant of the permit was both unconstitutional and in violation of city ordinances. Our disposition of issue "2" above renders those contentions moot before this Court. See fn. 19, infra.

(1) Whether the trial court erred when it concluded that Wildwood was not "aggrieved" by the decision of the Plan Commission?

(2) Whether the trial court erred in its conclusion that the Plan Commission acted within the scope of its statutory power when it granted the shopping center permit?

(3) Whether the trial court erred in finding that the Plan Commission's approval of the Lakewood development plan was supported by substantial evidence of probative value?

(4) Whether the trial court erred by failing to find that the Plan Commission had not complied with the requirement that "on-site inspections" be made part of the record?

(5) Whether the trial court's findings of fact and conclusions of law complied with the requirements of Trial Rule 52?

We conclude that the trial court erred when it concluded that the Plan Commission acted within its statutory powers when it granted the permit to construct Lakewood Shopping Center. In all other respects, the trial court is affirmed.

### I.

### "Aggrieved" Party

Wildwood contends that the trial court erred when it concluded that the Wildwood Park Community Association was not "aggrieved" by the approval of the shopping center permit. Absent status as an "aggrieved" party, of course, Wildwood lacked the statutorily defined standing which is necessary to obtain judicial review of a Plan Commission decision. IC 1971, 18–7–5–57, Ind.Ann.Stat. § 53–755 (Burns Code Ed.), *incorporating by reference* IC 1971, 18–7–5–87, Ind.Ann.Stat. § 53–783 (Burns Code Ed.).[2] Incongruously, the trial court's determination that Wildwood was not "aggrieved" by the Commission's decision—and hence not entitled to judicial review of it—was entered at the *conclusion* of the certiorari proceedings, *in conjunction with the court's resolution of the substantive merits of Wildwood's claim.* If the trial court's determination that Wildwood lacked standing to prosecute its claim is sustained, all other actions of the court will be rendered void—and this appeal put to rest.

In its petition for a Writ of Certiorari, Wildwood alleged that its membership was composed of approximately "170 families living in the immediate vicinity" of the proposed site of Lakewood Shopping Center, that the Association itself owned property adjacent to the 106.6 acre tract, and that the Association and its individual members were "affected and aggrieved" by the Commission's grant of the permit. Intended to establish Wildwood's standing to challenge the Commission's actions, the allegations ostensibly were designed to comport with the Court's decision in *Stout v. Mercer* (1974), 160 Ind.App. 454, 312 N.E.2d 515. There, the statutory term "aggrieved" party was interpreted to embrace landowners who wished to challenge the grant of a variance for a tract adjacent to their property. Writing for the unanimous Court, Judge Lybrook explained:

"It cannot be doubted that adjoining or surrounding landowners may be directly affected by the grant of a variance to a particular applicant. The use to which a tract of land is put may have a direct effect upon the value of surrounding

---

**2.** The procedure established for the review of a decision of a Board of Zoning Appeals is also made applicable to the review of Plan Commission decisions. IC 1971, 18–7–5–57, *supra*. Accordingly, the legal capacity to challenge a decision of the Commission is defined in IC 1971, 18–7–5–87, *supra*, which reads in pertinent part:

"Any person or persons, firm or corporation jointly or severally *aggrieved* by any decision of the board of zoning appeals, may present to the circuit or superior court of the county in which the premises affected is located a petition duly verified, setting forth that such decision is illegal in whole or in part, and specifying the grounds of the illegality. . . ." (Emphasis added).

The lead case defining what constitutes "aggrieved" status is *Metropolitan Dev. Commission v. Cullison* (1972), 151 Ind.App. 48, 277 N.E.2d 905.

properties. Adjoining or surrounding landowners may therefore be persons 'aggrieved' within the meaning of Burns § 53–783 as that section is construed in *City of Hammond, supra.* . . ."
*City of Hammond v. Board of Zoning Appeals* (1974), 152 Ind.App. 480, 284 N.E.2d 119. *Id.* at 520, 312 N.E.2d at 520. As the Court reasoned in *Stout,* so Wildwood alleged that it was "affected and aggrieved" by virtue of its proximity to the proposed site.

In its Response to Wildwood's petition, the Plan Commission did not address, let alone dispute, the allegations made by Wildwood with respect to its legal capacity to obtain judicial review. Subsequently, other respondents (generally composed of the developers of the proposed "Lakewood Shopping Center") filed a "Motion for Order Denying Issuance of Writ of Certiorari and Motion to Dismiss", wherein the following contention concerning Wildwood's allegation was raised.

"(e) Rhetorical paragraphs 5 and 6 allege that the petitioners are 'aggrieved parties' because they live in the 'immediate vicinity' but said paragraphs fail to allege any pecuniary or personal interests in the property or the decision of the Plan Commission."

Respondents-developers thus argued that the facts pleaded were not sufficient to establish Wildwood's status as an aggrieved party; they did not, however, specifically contend that Wildwood was not in fact aggrieved by the Commission's decision.

The trial court overruled the developers' motion to deny issuance of the Writ and dismiss the cause. The Writ issued, and the trial court held a hearing on the merits of Wildwood's claim that the Plan Commission had acted illegally in granting the permit. The question of Wildwood's standing to obtain judicial review was not raised by the Plan Commission or other respondents at the hearing, nor did the parties address that matter. Rather, they focused their presentation of evidence and legal arguments on the substantive issues raised by Wildwood in its petition.

Only when the trial court entered its "Findings of Fact and Conclusions of Law" did the question of Wildwood's capacity to challenge the Plan Commission's decision surface again. The court's conclusions, which were otherwise directed to the substantive contentions of Wildwood, included the following:

"*Twelve.* There is no sufficient showing that the Petitioners were aggrieved by the approval of the shopping center permit, and in the absence of such showing it is to be presumed that the allegation of the Petition with reference thereto is not sustained."

The court's approach to and disposition of the matter of Wildwood's standing reflects its misconceptions with respect to the manner in which a party's legal capacity to challenge a Plan Commission decision must be raised.

■■■ The legal capacity of a party to prosecute its claim is a matter which affects the trial court's *jurisdiction over the particular case*—not its jurisdiction over the subject matter. *Board of Trustees, Etc. v. City of Fort Wayne* (1978), Ind., 375 N.E.2d 1112, 1117; *Farley v. Farley* (1973), 157 Ind.App. 385, 300 N.E.2d 375, 383. Unlike subject matter jurisdiction, which cannot be waived by a party and may be raised, *sua sponte,* by the court, jurisdiction over the particular case may be waived by the failure to make a specific and timely objection. *Board of Trustees, Etc. v. City of Fort Wayne, supra; Decatur County R. E. Mem. Corp. v. Public Service Co.* (1971), 150 Ind. App. 193, 275 N.E.2d 857, 860.

■■ At no point in the certiorari proceedings below did the Plan Commission or developers specifically object that Wildwood was not in fact aggrieved by its decision. In its Response to Wildwood's Petition for a Writ of Certiorari, the Commission did not dispute Wildwood's allegations with respect to standing. Developers' Motion to Dismiss was predicated merely on the basis that the allegations contained in Wildwood's petition were insufficient to establish Wildwood's status as an aggrieved party. The Plan Commission and developers thus waived

their right to object to Wildwood's legal capacity to challenge its decision. *J. I. Case Co. v. Sandefur* (1964), 245 Ind. 213, 197 N.E.2d 519, 521; *Bowman v. Holsopple* (1973), 155 Ind.App. 272, 292 N.E.2d 274, 277; *Metropolitan Dev. Com'n of Marion Cty. v. Camplin* (1972), 153 Ind.App. 622, 288 N.E.2d 569, 571. The trial court had subject matter jurisdiction over the case by virtue of the provisions of IC 1971, 18–7–5–57, *supra*[3]; it could not raise, *sua sponte*, the question of its jurisdiction over the particular case, since the Plan Commission and developers had failed to raise the issue.

██ Moreover, the trial court's conclusion that Wildwood was not aggrieved by the Commission's decision is predicated on an incorrect statement of law. The respondents' failure to contest the veracity of the allegations made in Wildwood's petition acted as an admission of the facts contained therein. *Board of Zoning App. of City of Indianapolis v. Filis* (1965), 137 Ind.App. 217, 206 N.E.2d 628. The trial court nevertheless concluded that a presumption against the truth of those allegations existed. The contrary is true. The burden was on the Plan Commission and developers to controvert the veracity of the allegations. *Id.*

While the trial court erred in concluding that Wildwood was not aggrieved by the actions of the Plan Commission, the error was harmless. The court conducted a hearing on the substantive contentions raised by Wildwood and adjudicated those claims.

Accordingly, we turn our attention to Wildwood's various allegations that the trial court erred in its disposition of the substantive issues raised in its certiorari petition. At the outset it is necessary to examine the facts surrounding those claims.

## II.

### Substantive Issues—Facts

Prior to 1968, the Fort Wayne City Council had adopted a master plan and zoning map wherein the municipality was partitioned into zones designated for particular uses. According to that comprehensive scheme, the land surrounding the intersection of highways 14 and 24 was zoned "RA", denoting general residential use. Fort Wayne Zoning Map FF–1 (1968). In July of 1968, however, the zoning plan was amended by the placement of a "B–2" shopping center symbol (a star) at the intersection of highways 14 and 24, as depicted on the city's zoning map. Fort Wayne Ordinance No. Z–26–68 (1968).[4]

The placement of the symbol on the city's zoning map signified the Council's determination that the establishment of at least one[5] shopping center in the vicinity of the intersection would be consonant with the city's land use plans. It was not the office of the symbol to designate any particular tract of land for use as a shopping center site; in fact, those properties surrounding the intersection retained their original "RA" (general residential use) classification

3. The statute reads in pertinent part:
"A petition for certiorari shall specify the grounds upon which the petition alleges the illegality of the commission's action. Such petition must be filed in the circuit court of the county in which the land is located within 30 days after the date of such decision."

4. Ordinance Z–26–68, which authorized the placement of the shopping center symbol on the map, reads in its entirety:
"SECTION 1. A Shopping Center Symbol (B–2) is hereby placed at the intersection of Indiana Highway # 14 and U.S. Highway # 24 under the terms of Chapter 36, Municipal Code of the City of Fort Wayne, Indiana, 1946, as amended by General Ordinance No. 2836 and by General Ordinance No. G–96; and the City of Fort Wayne Zoning Map No.

FF–1; restablished [*sic*] by Section 9, Article III of said Chapter as amended, is hereby amended accordingly.
"SECTION 2. This Ordinance shall be in full force and effect from and after its passage and approval by the Mayor, and legal publication thereof."

5. The question whether the Council intended the symbol to prefigure the development of only one—or more than one—shopping center is raised by Wildwood in its appeal. If constructed, Lakewood Shopping Center will become the second shopping center to be constructed at the intersection. For reasons explained in fn. 19, *infra*, and accompanying text, we do not decide the question.

on zoning map FF–1. The implementation of the symbol—the construction of a shopping center near the intersection—remained a contingency dependent upon the application of a landowner for permission to use his or her property for that purpose.

Under Fort Wayne's zoning scheme, the exclusive power to grant or deny permits to construct shopping centers has been delegated by the City Council to the Plan Commission. In exercising that power, the Commission is governed by the provisions of Fort Wayne Ordinance No. 33–16(f), wherein the Council defined the procedural and substantive requirements to be satisfied before a permit can issue.

Under the procedural scheme outlined in the ordinance, a person who is seeking permission to construct a shopping center is directed to file an application for a permit; together with the preliminary development plan for the tract, with the city's Building Commissioner. The Commissioner in turn refers the application and development plan to the City Plan Commission. The Plan Commission is then required to hold an open hearing, after proper public notice, on the proposal. Thereafter, the Commission is empowered to approve or disapprove the preliminary development plan, or return it to the applicant for modification or supplementation to conform to the substantive requirements defined by the Council. Barring disapproval of the application, the process culminates in the Plan Commission's receipt and approval of the applicant's final development plan. The Commission then notifies the Zoning Enforcement Officer of its decision, who is in turn required to issue the permit. The ordinance contains no provision whereby the Council retains the power to review the Commission's ultimate decision.

Substantively, the Commission is empowered under the terms of Ordinance 33–16(f)(1)(a) [6] to grant two types of shopping center permits: (1) a "B–2A" permit for centers to be constructed on tracts of not less than three nor more than ten acres, and (2) a "B–2" permit for centers to be constructed on tracts of more than ten acres. In either case, the permit cannot be issued unless a portion of the subject tract lies wholly or partially within 1400 feet of a point designated by a "B–2A" or "B–2" symbol on the zoning map.

In addition to these prerequisites to the Plan Commission's approval of an application, the Commission must determine that the applicant's development plan conforms to the requirements and polestars laid down by the Council in subsection 3 of Ordinance 33–16(f) [7]: (1) that buildings will occupy less than twenty-five percent of the total area of the tract; (2) that ten percent of the acreage will be landscaped; (3) that the site will have an "acceptable relationship to major thoroughfares"; (4) that the plan

---

**6.** The subsection reads:

"a. The tract involved shall be an area of not less than ten acres for a B2 center, and shall not be less than three acres nor more than ten acres for a B2A center, and lie wholly or partially within fourteen hundred feet of a point represented by a B2, B2A symbol of the zoning map."

**7.** Ordinance 33–16(f)(3) reads in pertinent part:

"(3) *Development plan requirements.* In determining its approval or disapproval of a proposed development plan and supporting data, the commission shall be governed by the following:

"a. The area to be occupied by the buildings in this district shall be twenty-five per cent or less of the net area of the land described in the petition. Also, ten per cent of the area dedicated to open space shall be set aside for planting of trees, ground cover, shrubs and other landscaping material, which landscaping plan shall be explained in detail on such final plan.

"b. The location of the shopping center shall be on property which has an acceptable relationship to major thorough fares. The plans for the proposed shopping center must possess a unified and organized arrangement of buildings and service facilities, which shall have a functional relationship to the property comprising the plan development, and the uses of the property immediate and adjacent to the proposed development. In exercising its jurisdiction, the plan commission shall have the authority to restrict the size, height and relationship of one building to another within the center, and architecture and actual design so long as these elements are directly related to the health, safety, welfare and morals of the community."

presents a "unified and organized arrangement of buildings and service facilities"; and (5) that the plan has a functional relationship to adjacent properties.

Within this procedural and substantive framework, the Plan Commission processed and ultimately approved the application for the shopping center permit at issue before this Court. The application revealed that the proposed site of "Lakewood Shopping Center" was a 106.6 acre tract lying partially within 1400 feet of the "B–2" shopping center symbol placed at the intersection of highways 14 and 24. Generally, the accompanying development plan revealed a scheme to use the property for a variety of purposes; contemplated within the plan was the establishment of four department store buildings, a shopping mall composed of small commercial enterprises, six office buildings, four branch banks, three cinemas, and a 294 room hotel complex, complete with banquet, convention, and recreational facilities.[8]

The Plan Commission, after providing proper notice to the public, held a hearing on the Lakewood proposal. Both remonstrators and supporters of Lakewood Shopping Center appeared at the hearing and presented testimony and evidence regarding the feasibility of its proposed development. Thereafter, the members of the Plan Commission voted to approve the development plan and grant permission for the proposed construction of the shopping center. Wildwood subsequently instituted the certiorari action at bar.

### III.

### Statutory Power

Wildwood contends that the Plan Commission was not vested with statutory power to give final approval for the proposed construction of Lakewood Shopping Center. Rather, Wildwood maintains, the ultimate power to approve the Lakewood proposal rested by statute with the Fort Wayne City Council. We agree with Wildwood. An understanding of our disposition of these concomitant assertions is precipitated by an examination of the legislatively-defined advisory role of the Plan Commission *vis-a-vis* the City Council in the machinations of municipal zoning.

The substantive and procedural aspects of municipal zoning in Indiana are generally governed by the provisions of IC 1971, 18–7–5–1, Ind.Ann.Stat. § 53–701—18–7–5–99, Ind.Ann.Stat. § 53–795 (Burns Code Ed.)[9], which was enacted by the General Assembly in 1947. Therein, the legislature defined the relative roles of the Plan Commission and the City Council in the municipal regulation of land use.

The zoning powers of the City Council are enumerated in IC 1971, 18–7–5–58, Ind.Ann.Stat. § 53–756 (Burns Code Ed.). The statute reads in pertinent part:

"Certain powers of the city council or board of county commissioners.—As an integral part of the planning of areas so that adequate light, air, convenience of access, and safety from fire, flood and other danger may be secured; that congestion in the public streets may be lessened or avoided; that the public health, safety, comfort, morals, convenience and general public welfare may be promoted; and that the object of this legislation, as set out in section 1 [18–7–5–1] of this act, may be further accomplished, the city council or the board of county commissioners shall have the following powers:

---

**8.** These various uses were permitted within the confines of a "shopping center" under Fort Wayne Ordinance No. 33–16(f)(1).

**9.** The regulation of land use in counties containing first class cities, as defined in IC 1971, 18–2–1–1, Ind.Ann.Stat. § 48–1201 (Burns Code Ed.), is controlled by IC 1971, 18–7–2–1, Ind. Ann.Stat. § 53–901 *et seq.* (Burns Code Ed.). In addition, the application of IC 1971, 18–7–5–1 *et seq., supra,* to counties which are occu-

pied by a total population of between 90,000 and 175,000 and which contain a city of more than 65,000 persons may be affected by the provisions of IC 1971, 18–7–3–1 *et seq.* (Burns Code Ed.). Based on 1970 census figures for Fort Wayne and the county in which it is located (Allen County), our analysis here need focus only on the provisions of IC 1971, 18–7–5–1 *et seq., supra.*

"1. To classify, regulate and limit the height, area, bulk and use of buildings hereafter to be erected.

"2. To regulate and determine the area of front, rear and side yards, courts and other open spaces about such buildings.

"3. To regulate and determine the use and intensity of use of land and lot areas.

"4. To classify, regulate and restrict the location of trades, callings, industries, commercial enterprises and the location of buildings designed for specified uses.

"5. To classify and designate the rural lands amongst agricultural, industrial, commercial, residential, and other uses and purposes.

"6. To divide the city or county into districts of such kind, character, number, shape and area as may be deemed necessary to carry out the purposes of this section."

By the language it employed in the statute, the state legislature bestowed the exclusive authority to enact and amend zoning ordinances in the legislative arm of municipal government—the City Council. *Abrams v. Legbandt* (1974), 160 Ind.App. 379, 312 N.E.2d 113, 115.[10]

The exclusive nature of the Council's power to enact and amend zoning ordinances is reiterated throughout the statutory scheme for municipal regulation of land use. Pursuant to the procedure established in IC 1971, 18–7–5–39, Ind.Ann.Stat. § 53–737—18–7–5–43, Ind.Ann.Stat. § 53–741 (Burns Code Ed.) [11], a municipality's initial adoption of a master plan and zoning ordinance is not effective unless approved by the City Council. Similarly, subsequent amendments to a master plan and/or zoning ordinances are not valid unless adopted by the Council. IC 1971, 18–7–5–44, Ind. Ann.Stat. § 53–742 (Burns Code Ed.) [12]. Even "amendments, supplements, or changes in the regulations" of a zoning ordinance, under the terms of IC 1971, 18–

---

**10.** In *Abrams*, the Court construed IC 1971, 18–7–5–58, *supra*, for the purpose of determining the powers of the Board of County Commissioners. The statute simultaneously defines the powers of both the Board of County Commissioners and City Council; the statute governs regulation of land use by both political subdivisions of the State. Hence, the Court's construction of the statute in *Abrams* is relevant to our analysis here.

**11.** According to the procedure enunciated in the statutory scheme, which includes preliminary action by the Plan Commission (see fn. 14, *infra*, and accompanying text), ultimate authority for the approval or disapproval of the master plan and ordinance rests with the City Council. IC 1971, 18–7–5–43, *supra*, reads in pertinent part:

"If the city council or the board of county commissioners rejects the plan and ordinance or amends it, then it shall be returned to the commission for its consideration, with a written statement of the reasons for its rejection or amendment.

"The commission shall have 45 days in which to consider the rejection or amendment and report to the city council or board of county commissioners. If the commission approves the amendment, the ordinance shall stand as passed by the city council or board of county commissioners as of the date of the recording of the commission's report with the

city council or the board of county commissioners. If the commission disapproves the amendment or rejection the action of the city council or the board of county commissioners on the original amendment or rejection shall stand only if confirmed by a seventy-five per centum [75%] vote of the city council or by a unanimous vote of the board of county commissioners."

Only in the one rare instance defined in the above statutory language does the Plan Commission play more than an advisory role. *See Town of Merrillville v. Collins* (1978), Ind.App., 382 N.E.2d 188. That exception is not applicable here.

**12.** IC 1971, 18–7–5–44, *supra*, incorporates by reference the procedure established in IC 1971, 18–7–5–39—43, *supra*. The statute reads:

"Amendments after adoption of master plan and ordinance.—After the adoption of a master plan and ordinance, all amendments to it shall be adopted according to the procedure set forth in sections 37 through 40 [18–7–5–39—18–7–5–42], except that, if the city council or board of county commissioners desires an amendment it may direct the plan commission to prepare an amendment and submit it to public hearing within 60 days after formal written request by the city council or board of county commissioners. [Acts 1947, ch. 174, § 42, p. 571.]"

7–5–67, Ind.Ann.Stat. § 53–765 (Burns Code Ed.) [13], cannot be accomplished without passage by the City Council.

The Council is also empowered by statute with the option of creating a Plan Commission to assist in the regulation of land use within the city. IC 1971, 18–7–5–1, Ind. Ann.Stat. § 53–701 (Burns Code Ed.). In contrast with the Council's statutory role as final and exclusive authority for the enactment, amendment, supplement, or change of zoning ordinances, however, the legislature has limited the Plan Commission to an "advisory" role in municipal zoning.

The legislature's intent that the Plan Commission, if created, serve only in an advisory capacity to local zoning boards and officials was expressly stated in IC 1971, 18–7–5–1, *supra.* The statute reads in relevant part:

"Plan commission for city, town and county—Creation—Objectives—Duties and powers.—Each city council, each town board of trustees and each board of county commissioners in the state may by ordinance create a plan commission in order to promote the orderly development of its governmental units and its environs. It is the object of this legislation to encourage local units of government to improve the present health, safety, convenience, and welfare of their citizens and to plan for the future development of their communities to the end that highway systems be carefully planned, that new community centers grow only with adequate highway, utility, educational, and recreational facilities; that the needs of agriculture, industry and business be recognized in future growth; that residential areas provide healthy surroundings for family life; and that the growth of the community is commensurate with and promotive of the efficient and economical use of public funds.

**13.** IC 1971, 18–7–5–67, *supra*, reads in pertinent part:

"Procedure in amending, supplementing and changing—Vote required where commission is adverse.—Amendments, supplements or changes of the regulations of the zoning ordinance shall be considered as amendments to the master plan. Any proposed

"In accomplishing this objective, *it is the intent of this legislation that the plan commission shall serve in an advisory capacity to presently established boards and officials*, and in addition, that certain regulatory powers be created over developments affecting the public welfare and not now otherwise controlled, and that additional powers be granted legislative bodies of cities, towns and counties to carry out the purposes of this act [18–7–5–1—18–7–5–99]." (Emphasis added.).

The parameters of this "advisory" role were defined by the legislature in IC 1971, 18–7–5–28, Ind.Ann.Stat. § 53–728 (Burns Code Ed.):

"Powers and duties of commissions.— To effectuate the purposes of this chapter [18–7–5–1—18–7–5–99], the commission shall have the power and duty to:

"(1) Exercise general supervision of and make regulations for the administration of the affairs of the commission.

"(2) Prescribe uniform rules pertaining to investigations and hearings.

"(3) Supervise the fiscal affairs and responsibilities of the commission.

"(4) Prescribe the qualifications of, appoint, remove, and fix the compensation of the employees of the commission, with compensation to be in conformity and compliance with salaries and compensations theretofore fixed by the city or county councils of the cities or counties; delegate to employees authority to perform ministerial acts in all cases except where final action of the commission is necessary.

"(5) Keep an accurate and complete record of all departmental proceedings; record and file all bonds and contracts and assume responsibility for the custody and preservation of all papers and documents of the commission.

ordinance for the amendment, supplement, change or repeal of the zoning ordinance not originating from petition of the plan commission shall be referred to the plan commission for consideration and report before any final action is taken by the city council or the board of county commissioners."

"(6) Make recommendations and an annual report to the mayor and council or the board of county commissioners and the county council concerning the operation of the commission and the status of planning within its jurisdiction.

"(7) *Make recommendations to the city council or the board of county commissioners on:*

"(a) *the adoption of the master plan and ordinance and amendments;*

"(b) *any other matter, within the jurisdiction of the commission, authorized by this chapter.*

"(8) *To render decisions concerning and to approve:*

"(a) *plots or replots of subdivisions;*

"(b) *development plans for residential, commercial and industrial uses.*

"(9) Prepare, publish and distribute reports, ordinances and other material relating to the activities authorized under this chapter.

"(10) Adopt a seal, and certify to all official acts.

"(11) Sue and be sued collectively by its legal name, styled according to the city or county, '_____ City or County Plan Commission,' service of process being had on the president of the commission; but no costs shall be taxed against the commission or any of its members in any action.

"(12) Invoke any legal, equitable or special remedy for the enforcement of the provisions of this chapter or its action taken thereunder.

"(13) Prepare and submit an annual budget in the same manner as other departments of city and county government and shall be limited in all expenditures to the provisions made therefor by the city council of such city or the county council of such county.

"(14) If deemed advisable, establish an advisory committee or committees. [Acts 1947, ch. 174, § 28, p. 571; 1974, P.L. 76, § 3, p. 298.]." (Emphasis added.)

Particularized in subsections seven (7) and eight (8) is the Plan Commission's role in the procedural machinations by which a municipality adopts a master zoning plan, subsequently amends it, and ultimately applies its precepts to specific properties.

Subsection seven (7), which empowers the Plan Commission to make "recommendations" concerning the adoption of the master zoning plan and its subsequent amendment, is implemented in the statutory procedural scheme with which municipalities must comply to accomplish such action. Whereas, as heretofore discussed, the City Council enjoys the ultimate authority to approve or disapprove of a proposed master plan or amendment, supplement, or change thereto, the Plan Commission in any such instance serves only a preliminary function. In a municipality's adoption of a master plan, the Commission, if extant, is required to hold a public hearing on the proposed scheme and make a *recommendation* to the City Council regarding its passage. IC 1971, 18–7–5–39, Ind.Ann.Stat. § 53–737—18–7–5–40, Ind.Ann.Stat. § 53–738 (Burns Code Ed.).[14] This same limited role is statutorily imposed on the Plan Commission when amendments to the master plan or a zoning ordinance are proposed. IC 1971, 18–7–5–44, *supra.*[15] And when an amend-

---

**14.** IC 1971, 18–7–5–39, *supra*, reads:

"Notice and hearing on adoption of master plan—Publication.—Prior to the adoption of a master plan, the commission shall give notice and hold a public hearing on the plan and a proposed ordinance for its enforcement.

"At least ten [10] days prior to the date set for hearing, the commission shall publish in a newspaper of general circulation in the city or county a notice of the time and place of the hearing. [Acts 1947, ch. 174, § 37, p. 571.]"

IC 1971, 18–7–5–40, *supra*, reads:

"Adoption of plan by commission after hearing—Recommendation of ordinance.—After a public hearing has been held, the commission may by resolution adopt the master plan and recommend the ordinance to the city council or the board of county commissioners. [Acts 1947, ch. 174, § 38, p. 571.]"

**15.** IC 1971, 18–7–5–44, *supra*, incorporates by reference the provisions of IC 1971, 18–7–5–39 and 40, *supra*. *See* fn. 11, *supra*, for the text of the statute.

ment, supplement or change to a regulation in a zoning ordinance is presented for consideration, the Commission's duty is to examine it and report on its feasibility to the Council. IC 1971, 18–7–5–67, *supra*.[16]

Unlike subsection seven (7), however, wherein the legislature limited the Plan Commission to a purely advisory function, the provisions of section eight (8) bestow final authority on the Commission for two facets of land use regulation. Therein, the Commission is empowered to "render decisions . . . and to approve" (1) plots or replots of subdivisions, and (2) development plans for residential, commercial, and industrial uses.

▮ Our determination here revolves around the provisions of these two subsections of IC 1971, 18–7–5–28, *supra*. Wildwood contends that the Plan Commission's grant of the shopping center permit served to amend Fort Wayne's master zoning plan; accordingly, Wildwood argues that subsection seven (7) precluded the Commission's capacity to give final approval for the construction of the shopping center. The Plan Commission, on the other hand, asserts that the only "amendment" to the master plan occurred in 1968, when the City Council enacted ordinance Z–26–68, thereby placing a shopping center symbol at the intersection of highways 14 and 24 (as designated on zoning map FF–1). The Commission maintains that the grant of the permit merely effectuated the result contemplated in the properly enacted 1968 amendment—the construction of a shopping center on a tract lying wholly or partially within 1400 feet of the intersection. Hence, the Commission concludes that its grant of the permit merely amounted to the approval of a development plan for a commercial enterprise, an act clearly within the purview of its powers established in subsection eight (8) of IC 1971, 18–7–5–28, *supra*. We reject the latter contention; we agree with Wildwood.

When the City Council enacted Ordinance No. Z–26–68 in 1968 and placed the shopping center symbol at the crossroads of highways 14 and 24, it signalled its determination that the future development of a shopping center within the vicinity of the intersection would be compatible with its land use scheme. It did not, however, designate the particular tract which could be used as a shopping center site; it merely declared that any tract lying wholly or partially within 1400 feet of the intersection could be used as a shopping center site.[17] Meanwhile, the property surrounding the intersection, potentially subject to use as a shopping center site, retained its "general residential" classification. The *actual use*

16. *See* fn. 13, *supra*, for the text of IC 1971, 18–7–5–67, *supra*.

17. Fort Wayne's scheme for the establishment of shopping centers embodies a relatively new technique in municipal zoning: the "floating zone". As its name implies, the floating zone is not affixed to a particular tract of land at its inception; rather, it is said to "float" over the city until a subsequent event—usually the approval of a landowner's application to implement the zone—causes it to settle to the surface. Once affixed to the landowner's property, it is similar to other types of zones, with the exception that, depending on local ordinance, it may remain available for implementation by other landowners. E. Yokely, 1 *Zoning Law and Practice* §§ 5–7 p. 232–237. (4th Ed. 1978).

As indicated, the floating zone is a two-step technique involving (1) the creation of the zone, and (2) the implementation of the zone. Without question, the creation of the zone is a legislative matter lying within the province of the City Council. The implementation of the floating zone, most authorities agree, is also a legislative act requiring passage of a second ordinance. A.L.I., *A Model Land Development Code* § 2–312 p. 110–111 (April 1975 Draft); D. Hagman, *Urban Planning and Land Development Control Law* § 62 p. 117 (1971); R. Anderson, 2 *American Law of Zoning* § 8.38 p. 19 (1968). Other jurisdictions, in the context of differing statutory schemes, have divided on the question whether the implementation of the zone is the exclusive province of the municipality's legislative body. *See Lutz v. Longview* (1974), 83 Wash.2d 566, 520 P.2d 1374 (implementation the exclusive province of the Council); *Bellemeade Company v. Priddle* (1974), (Ky.1974), 503 S.W.2d 734 (Implementation can be accomplished by Plan Commission). The nature of the floating zone, its role in the zoning process, and the legal questions raised by its usage are summarized in 80 A.L.R.3d 95 (1977). *See also, Reno, Non-Euclidean Zoning; The Use of the Floating Zone*, 23 Md.L.Rev. 105 (1963).

of properties lying within the ambit of the overlapping shopping center and residential zones was dependent upon the application of landowners to implement the shopping center symbol, together with the Plan Commission's disposition of those applications and accompanying development plans.

The Plan Commission's grant of the permit thus amounted to something more than the mere approval of a development plan for a commercial enterprise; it served to determine which of two available uses would be imposed on the property at issue. This upshot of the Commission's grant of the permit, albeit predicated on the approval of a development plan, renders the Commission's act invalid under the state statutory scheme.

Therein, the legislature expressly vested the City Council with the power to "determine the use . . . of land and lot areas." IC 1971, 18–7–5–58(3), *supra.* The Council's domain is not wholly exclusive; the legislature also granted the Board of Zoning Appeals a limited capacity to effect land usage by empowering it to grant variances, exceptions, and special exceptions to zoning classifications. IC 1971, 18–7–5–82, Ind.Ann.Stat. § 53–778 (Burns Code Ed.). The Plan Commission, however, was not granted any authority to determine land usage. Expressly contemplating an "advisory" role for the Plan Commission in the machinations of municipal zoning, the legislature extended the Commission's powers only so far as to allow it to approve development plans and "plots or replots of subdivisions." IC 1971, 18–7–5–28(8), *supra.* In all other facets of land use control—the amendment of the master plan or zoning ordinance, or even the supplementation or change of a regulation within an ordinance—the Commission has only advisory authority. IC 1971, 18–7–5–28(7), *supra,* as implemented in IC 1971, 18–7–5–39—40, *supra.*[18] In the context of this statutory scheme, with its overriding emphasis on the advisory nature of the Plan Commission's role, we cannot conclude that the Commission's authority to approve development plans embraced the power to determine whether a 106.6 acre parcel of property would be devoted to residential or commercial use.

Our conclusion that the Commission did not have authority to give final approval to the Lakewood proposal is also predicated on the fact that Fort Wayne Ordinance 33–16(f) did not prescribe maximum acreage limitations for proposed shopping center sites. The Council's placement of the shopping center symbol at the intersection of highways 14 and 24 created overlapping residential and shopping center zones, as heretofore noted. Consequently, the Commission's grant of the permit for the 106.6 acre Lakewood proposal served to divide the overlapping commercial and residential districts and to determine the size and shape of each zone. The authority to determine the location, size, and shape of districts rests by statute with the City Council, not the Plan Commission. IC 1971, 18–7–5–58(6), *supra.* The Plan Commission has only advisory authority in such matters. IC 1971, 18–7–5–28(7), *supra.*

■ When a political subdivision of the State attempts to regulate land use within its jurisdiction, it must do so in accordance with the statute which authorizes it. *State ex rel. Mich. City Pl. Com'n v. LaPorte Sup. Ct. No. 1* (1973), 260 Ind. 587, 590, 297 N.E.2d 814, 815; *Town of Homecroft v. MacBeth* (1958), 238 Ind. 57, 148 N.E.2d 563, 567; *First Church of Nazarene v. Weaver* (1972), 154 Ind.App. 157, 289 N.E.2d 155, 158. The Plan Commission, albeit acting under the auspices of Fort Wayne zoning ordinances, exceeded its statutory authority when it granted the permit for the construction of Lakewood Shopping Center. Under Indiana's statutory scheme for the municipal regulation of land use, final au-

---

18. IC 1971, 18–7–5–43, *supra,* and IC 1971, 18–7–5–67, *supra,* do define one rare instance where the Commission plays more than a mere advisory role. *See Town of Merrillville v. Collins* (1978), Ind.App., 382 N.E.2d 188. This exception is not applicable to the case at bar.

thority over the Lakewood proposal rests with the Fort Wayne City Council.[19]

Our conclusion that the Plan Commission did not have the authority to give final approval for the construction of Lakewood Shopping Center does not affect the Commission's approval of the Lakewood development plan, however. That determination was one which the Commission was expressly empowered to make under the terms of IC 1971, 18–7–5–28(8), *supra*. The remainder of our opinion is addressed to issues which concern the Commission's approval of the development plan.

### IV.

### Approval of Development Plan

Wildwood contends that the trial court erred in its conclusion that the Plan Commission's approval of the development plan for Lakewood Shopping Center was supported by substantial evidence of probative value. Its contention is directed toward the evidence regarding the polestars of Fort Wayne Ordinance No. 33–16(f)(b), *supra*, which the Commission must deem satisfied by a development plan in order to approve it. Wildwood asserts that the evidence is insufficient to establish (1) that the center will have a functional relationship to surrounding properties, (2) that the site will have an acceptable relationship to major thoroughfares, and (3) that the construction of the center will promote the health, safety, and welfare of the community.

At the hearing conducted by the Plan Commission on the Lakewood proposal, extensive evidence was presented to the Commission regarding the feasibility of its construction. The evidence included conflicting analyses by supporters and remonstrators of Lakewood concerning the impact the contemplated development would have on traffic congestion and the general quality of life in the surrounding area.

■ It is not the office of this Court, however, to weigh the conflicting evidence and impose our judgment on Fort Wayne regarding the feasibility of the Lakewood project. *Devon Civic League v. Marion County Bd. of Zon. App.* (1967), 140 Ind. App. 519, 524, 224 N.E.2d 66, 69. We examine the record only to determine whether there is *any* substantial evidence of probative value which establishes a foundation for the Commission's decision. *Id. Accord, Fryer v. City of New Albany* (1963), 135 Ind.App. 454, 459, 194 N.E.2d 417, 420.

■ The record is replete with evidence of probative value which supports the Plan Commission's decision to approve the development plan. Mr. Thomas Manning, Traffic Engineer for the City of Fort Wayne, testified that he was "confident" that the street design and stoplight system would accommodate the increase in traffic. He also stated that the city would "be facing the same traffic conditions with or without Lakewood" as the city's expansion enveloped the area. In a letter written by Manning, he concluded: "The design as submitted will adequately handle the anticipated peak hour loads *thru [sic] the area* and do *[sic]* conform to the long term plans within the corridors adjacent to the Center." (Original emphasis). Similar conclusions were reached in a lengthy written report entitled "Site Traffic Analysis" which was submitted to the Commission by the Lakewood Development Company. The impact of the proposed shopping center on Fort Wayne's employment rate, economic growth, downtown business sector, and demographic trends was thoroughly analyzed in a report prepared by Dr. George F. Bloom, professor of real estate administration at Indiana University, and Mr. Morton J. Marcus, an economist at Indiana University's School of Business. Their report un-

---

**19.** Our decision obviates the need for this Court to address Wildwood's contentions that the Plan Commission's grant of the permit was both unconstitutional and violated city ordinances. Those allegations, which are also directed to the capacity of the Plan Commission to approve the permit, have been rendered moot before this Court. Among those questions we need not decide is whether the City Council intended the symbol to prefigure the development of only one—or more than one—shopping center near the intersection. That question will be decided by the body best suited to make the determination—the Council itself.

equivocally endorsed the Lakewood proposal for its positive effect on all aspects of Fort Wayne's development. The authors concluded:

"The development of Lakewood is consistent with the continued development of downtown Fort Wayne as a center for area-serving public and private functions. Lakewood represents a reintegration of land use in Fort Wayne."

Based on the above evidence, the trial court did not err when it concluded that the Plan Commission's decision to approve the Lakewood development plan was supported by substantial evidence of probative value.

## V.

### On-Site Inspection

The record reveals that various members of the Plan Commission made a personal inspection of the 106.6 acre tract to examine its feasibility as a shopping center site. Wildwood contends that the failure of the Plan Commission to include the results of that inspection within the record renders its decision to approve the development plan void. In support of its proposition, Wildwood relies on IC 1971, 18–7–5–81, Ind.Ann. Stat. § 53–777 (Burns Code Ed.) and *Stanley v. Board of Zoning Appeals* (1972), 152 Ind.App. 418, 283 N.E.2d 809.

IC 1971, 18–7–5–81, *supra*, which establishes the duty to make a record of on-site inspections, is applicable to the Board of Zoning Appeals—not the Plan Commission. Wildwood impliedly argues, however, that the language of IC 1971, 18–7–5–28(9), *supra*, which requires the Plan Commission to "publish reports" of its "activities", imposes on the Plan Commission the same duties required of the Board of Zoning Appeals under IC 1971, 18–7–5–81, *supra*. We need not address Wildwood's proposition.

Assuming *arguendo* that the Commission had a duty to record the results of its members' on-site inspection, its failure to do so does not vitiate the validity of its decision. In *Stanley v. Board of Zoning Ap-*

peals, Jasper County, supra, this Court held merely that a decision could not be predicated solely on an unrecorded site inspection. *Id.* at 812. Here, however, as previously discussed, there is a plethora of evidence to support the Commission's decision, with or without the inclusion of the on-site inspection results. The Commission's failure to record its members' on-site inspection cannot serve to void that body's approval of the Lakewood development plan, even if that recordation was required.

## VI.

### TR. 52

■ Wildwood contends that the trial court's "Findings of Fact and Conclusions of Law" lack the specificity necessary to satisfy the purpose of Ind. Rules of Procedure, Trial Rule 52: to enable this Court to intelligently review the basis for the lower court's decision. We disagree. This Court has not been hampered in its review of this appeal by the trial court's findings, which exceed in specificity those approved in *Kessler-Allisonville C. L. v. Marion County Bd. of Z. A.* (1965), 137 Ind.App. 610, 209 N.E.2d 43. The trial court was not required to make conclusions of law. TR. 52(A); *In re Graft* (1972), 153 Ind.App. 546, 554, 288 N.E.2d 274, 278, fn. 3. The court did not err.

The trial court erred when it concluded that the Plan Commission acted within its statutory powers when it granted the permit to construct Lakewood Shopping Center. In that respect, the cause is remanded to the trial court with instructions to refer the Lakewood application to the Fort Wayne City Council for its ultimate disposition. In all other respects, the trial court is affirmed.[20]

GARRARD, P. J., concurs.

HOFFMAN, J., dissents with opinion.

---

20. We reiterate that our conclusion that the Plan Commission lacked the statutory authority to give final approval for the construction of the shopping center does not affect the Commission's approval of the Lakewood development plan.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

A person aggrieved by a decision of the Plan Commission may seek review of that decision by filing a petition for a writ of certiorari with the clerk of the circuit or superior court in the county in which the affected land is located. IC 1971, 18–7–5–57 (Burns Code Ed.); IC 1971, 18–7–5–87 (Burns Code Ed.). It is then the duty of the court to order the Commission to show cause, within twenty days, why a writ should not be issued. IC 1971, 18–7–5–89 (Burns Code Ed.). If the Commission fails to show cause, the court may then issue a writ directed to the Commission. The writ shall prescribe a time, not less than ten days from the date of its issuance, within which the Commission shall make its return. *Id.*

In a return verified by its secretary, the Commission must "concisely set forth such facts and data as may be pertinent and present material to show the grounds of the decision appealed from." IC 1971, 18–7–5–91 (Burns Code Ed.). The court may review the decision of the Commission without further pleading. It may, if necessary, hear evidence to supplement the return, but the review shall not be *de novo*. *Id.*

In the instant case I cannot subscribe to the view that the issue of Wildwood's standing to seek review was not timely raised. The developers' "Motion for Order Denying Issuance of Writ of Certiorari and Motion to Dismiss," quoted in the majority opinion, properly raised the issue by alleging that Wildwood fell outside the definition of "aggrieved" person because it had no "personal or pecuniary" interest which was affected by the Commission's order. *See: Metro. Development Comm. v. Cullison et al.* (1972), 151 Ind.App. 48, at 50–51, 277 N.E.2d 905, at 906–907; *City of Hammond v. Bd. of Zoning Appeals* (1972), 152 Ind.App. 480, at 488–489, 284 N.E.2d 118, at 125. This motion, filed in response to Wildwood's petition, alleged that cause why a writ of certiorari should not issue (IC 1971, 18–7–5–89) did indeed exist, to-wit: lack of standing to seek review. Nothing more was necessary to place the issue directly before the court.

Mention is made by the majority of the fact that the standing issue was raised only by the developers and not by the Commission. It has been held, however, that the manner in which the issuance of a writ of certiorari is challenged is immaterial. *Horton & Sons, Inc. v. Bd. of Zon. App., etc., et al.* (1956), 235 Ind. 510, 135 N.E.2d 243, citing IC 1971, 18–7–5–92 (Burns Code Ed.). Accordingly, it is of no significance whatever that the matter was not raised by the Commission.

I would, therefore, uphold the trial court's determination that Wildwood was not aggrieved by the Commission's order. Although the court initially determined that Wildwood was entitled to challenge the Commission's action by way of a certiorari petition, its later finding that Wildwood lacked the requisite interest to maintain such a proceeding was not fatally undermined by that earlier ruling, for it is well-settled that the court had inherent power to change that ruling at any time prior to the entry of judgment. *See: McLaughlin v. American Oil Co.* (1979), Ind.App., 391 N.E.2d 864; *Metro. Develp. Comm. et al. v. Newlon et al.* (1973), 156 Ind.App. 464, 297 N.E.2d 483.

The case of *Bd. of Zon. Ap. of City of Indpls. v. Filis* (1965), 137 Ind.App. 217, 206 N.E.2d 628, is cited by the majority for the following proposition:

"The respondents' failure to contest the veracity of the allegations made in Wildwood's petition acted as an admission of the facts contained therein."

The court in *Filis* held that "the effect of a demurrer to a petition for a writ of certiorari amounts to an admission of all facts well pleaded." 206 N.E.2d at 631. This decision on a method of proceeding not now in use (the demurrer) is, in my view, inapplicable to the case at bar. Furthermore, the majority's statement that a mere failure to respond amounts to an admission of the facts contained in the petition is patently contrary to two relevant statutory provisions: IC 1971, 18–7–5–89, which provides

that the effect of the Commission's failure to show cause is that a writ will issue; and IC 1971, 18–7–5–92, which empowers the court, after the return to the writ is made, to decide the sufficiency of the allegations contained in the petition *without further pleading.*

That the majority's quotation from *Stout v. Mercer et al.* (1974), 160 Ind.App. 454, 312 N.E.2d 515, is also misleading in the context of this case cannot be doubted. The issue addressed in that case was whether a person who otherwise met the criteria of *Metro. Development Comm. v. Cullison et al., supra,* was entitled, as a person aggrieved, to seek review of a commission order even though he had not appeared before the commission to oppose the order. The *Stout* decision did *not* hold that a person's status as an adjoining or surrounding landowner was, in and of itself, sufficient to qualify him as an aggrieved party. Rather, *Stout* held, quoting from the *Cullison* decision, that a person must have been denied a personal or property right, have had a burden or obligation imposed upon him or have had a legal interest diminished or enlarged by the commission's action in order to be "aggrieved" by that action.

For all these reasons I am unable to join the majority opinion.