**COMMON COUNCIL OF the CITY OF FORT WAYNE, Indiana, Plaintiff-Appellant,**

v.

**FORT WAYNE PLAN COMMISSION, Defendant-Appellee.**

**No. 3–282A21.**

Court of Appeals of Indiana, Third District.

Dec. 13, 1982.

Rehearing Denied Jan. 21, 1983.

Ralph R. Blume, Blume, Wyneken, Bullman & Connelly, Fort Wayne, for plaintiff-appellant.

George Martin, Associate City Atty., Fort Wayne, for defendant-appellee.

GARRARD, Judge.

The City Common Council appeals from a judgment wherein a tract of real estate was held to be rezoned by action of the Plan Commission.

The owner of real estate located at the intersection of Highways 14 and 24 in Fort Wayne sought a zoning classification that would have permitted the development of a shopping center on the property. In 1977 the Plan Commission voted to grant a permit to allow construction of the shopping center. Neighborhood residents sought review by writ of certiorari of the Plan Commission's action. Subsequently, the trial court affirmed the Plan Commission's actions and the residents appealed. In *Wildwood Park Community Assoc. v. Fort Wayne City Plan Commission* (1979), Ind. App., 396 N.E.2d 678 we determined the Plan Commission had exceeded its statutory authority when it granted the shopping center permit. We concluded that final authority over the development of the real estate rested with the Fort Wayne City Council. The cause was remanded to the trial court with instructions to refer the application for the shopping center permit to the Fort Wayne City Council for its ultimate disposition.

In *Wildwood* at 396 N.E.2d 682–3 we noted these facts:

"Prior to 1968, the Fort Wayne City Council had adopted a master plan and zoning map wherein the municipality was partitioned into zones designated for particular uses. According to that comprehensive scheme, the land surrounding the intersection of highways 14 and 24 was zoned 'RA,' denoting general residential use. Fort Wayne Zoning Map FF–1 (1968). In July of 1968, however, the zoning plan was amended by the placement of a 'B–2' shopping center symbol (a star) at the intersection of highways 14 and 24, as depicted on the city's zoning map. Fort Wayne Ordinance No. Z–26–68 (1968).

The placement of the symbol on the city's zoning map signified the Council's determination that the establishment of at least one shopping center in the vicinity of the intersection would be consonant with the city's land use plans. It was not the office of the symbol to designate any particular tract of land for use as a shopping center site; in fact, those properties surrounding the intersection retained their original 'RA' (general residential use) classification on zoning map FF–1. The implementation of the symbol—the construction of a shopping center near the intersection—remained a contingency dependent upon the application of a landowner for permission to use his or her property for that purpose."

In January of 1981 the Fort Wayne Zoning Code was amended. The use of shopping center symbols was discontinued. The existing shopping centers, the zoning of which had been approved under the old "symbol" method, were reclassified by ordinance into sub-categories depending on particular size. The Plan Commission submitted to the Common Council a reclassification petition on the tract of real estate, Apple Glen, which is located at the intersection of Highways 14 and 24. The Common Council was not satisfied with this procedure and ordered that the form of petition be amended to conform with the requirements for a rezoning petition.

As such, the petition constituted a request to change the zoning of the tract from "residential agricultural" to "regional shopping center." The council accepted the petition as sponsored by the Plan Commission and it was referred to the Plan Commission for a recommendation. The Plan Commission gave notice and held a public hearing. The Commission then recommended to the council that the petition for rezoning be approved.

On February 11 and 12, 1981 the council held public hearings on the petition for rezoning of Apple Glen. On February 12, 1981 the petition was placed before the council for final vote. The petition was denied by a vote of 5 against and 4 in favor.

After the council had adjourned, the presiding officer of the council directed the council's attorney to prepare a summary of reasons given by the majority for rejecting the rezoning petition. The summary was signed by the presiding officer and addressed to the Plan Commission, requesting that the Plan Commission take action as required under the provisions of IC 18–7–4–510.

At the next session of the Common Council a motion was made and adopted that the defeated ordinance not be sent back to the Plan Commission, but that the documents be physically retrieved from the Plan Commission by the city clerk. The clerk, however, did not retrieve the petition.

Once the Plan Commission had possession of the petition, it re-voted on the petition with the result being 6 in favor, 2 against and 1 abstention. The Plan Commission then resubmitted the petition to the Common Council. The council responded by tabling the petition indefinitely and taking no further action.

The Plan Commission then proceeded as if the zoning ordinance had been passed. The Plan Commission's actions prompted the Common Council to file suit seeking a declaratory judgment that its rejection of the Apple Glen rezoning petition and other rezoning petitions constituted final and effective rejections of the proposed rezonings, and injunctive relief to enjoin the Plan Commission from entertaining final development plans for Apple Glen.

The Plan Commission counterclaimed, urging that the failure of the Common Council to reject the re-submitted rezoning petition within 120 days constituted an approval thereof as a matter of law. It also sought a declaratory judgment that Apple Glen was rezoned as a regional shopping center by virtue of the inaction by the Common Council.

Trial to the court without intervention of a jury was held on July 29, 1981. On August 27, 1981 the court entered its findings of fact, conclusions of law, and judgment.

The trial court found that pursuant to *Town of Merrillville v. Collins* (1978), Ind. App., 382 N.E.2d 188 and IC 18–7–4–508–511 the ordinance was passed because the council had failed to confirm its rejection of the rezoning ordinance.

The Common Council raises these issues:

(1) Where a Plan Commission has recommended enactment of an ordinance to rezone a particular tract of land, is the Common Council required to report to the Plan Commission the reasons for its rejection of the rezoning ordinance and return it to the Plan Commission for further consideration?

(2) Where a Common Council has rejected a proposed rezoning, may the Plan Commission reapprove the proposed zoning and thereby cause the change unless within 120 days after resubmission the Common Council shall reject the rezoning as resubmitted by a ¾ negative vote?

(3) Even if such actions constitute an approval of the proposed zoning change, does not the ordinance require the timely signature of the mayor in order to become effective?

Our planning and zoning laws have undergone several recent revisions and compilations. When we considered the zoning of this property previously in *Wildwood Park, supra,* the applicable laws were found in IC 18–7–5. After the case was remanded, IC 18–7–5, as well as IC 18–7–4–1 through IC 18–7–4–99 were repealed by Acts 1979, P.L. 178, Section 164 and recodified by Acts 1979, Section 178 as IC 18–7–4–101 through 1213, which is the applicable law for the present appeal. IC 18–7–4–101 through 1213 has since been repealed by Acts 1981, P.L. 309, Section 115 and recodified in IC 36–7–4 (Planning and Development).

We agree that the trial court properly applied the reasoning of *Town of Merrillville v. Collins, supra.*

IC 18–7–4–607(a) authorized advisory plan commissions to initiate amendments to the zoning ordinance, and IC 18–7–4–608(a) provides for notice and a hearing by the advisory plan commission on proposed

amendments. While IC 18–7–4–609(a) specifies the effects which follow the plan commission's *disapproval* of a proposed zoning change, none of the 600 series sections deal specifically with the effect of approval by the advisory plan commission but disapproval by the legislative body. Instead IC 18–7–4–611(a) provides that for advisory plan commissions:

"Amendment or repeal of the zoning ordinance is considered an amendment to the master plan."

The statute thus invokes application of the pertinent procedures relating to advisory plan commissions in the adoption and amendment of master plans. *Town of Merrillville, supra.*

IC 18–7–4–511(a) provides that amendments to the master plan, ergo amendments to the zoning ordinance, shall be adopted according to the procedure set forth in sections 507(a), 508(a) and 509(a).

IC 18–7–4–507(a) provides for notice and hearing. IC 18–7–4–508(a) provides that after the hearing the advisory plan commission may adopt the amendment and recommend it to the legislative body. This section proceeds:

"Upon adoption of the comprehensive plan and the recommendation of the ordinance, the secretary shall certify a copy of the comprehensive plan and ordinance to the legislative body. At the first meeting of the legislative body after adoption of the comprehensive plan, the secretary or a member of the commission shall present the comprehensive plan and ordinance to that legislative body."

IC 18–7–4–509(a) then provides:

"One Hundred twenty (120) days after certification of the comprehensive plan and ordinance to the legislative body, the comprehensive plan and ordinance have the same effect as all other ordinances unless the legislative body has within that time finally acted on it."

While IC 18–7–4–511(a) does not specifically refer to IC 18–7–4–510(a), as we held with the predecessor statute in *Town of Merrillville,* 382 N.E.2d at 190, the intent of the legislature to make it applicable seems clear. Section 510(a) provides:

"If the legislative body rejects or amends the comprehensive plan and ordinance, then it *shall* return the comprehensive plan and ordinance to the advisory plan commission for its consideration, with a written statement of the reasons for its rejection or amendment.

The commission has forty-five (45) days in which to consider the rejection or amendment and to file its report with the legislative body. If the commission approves the amendment, the ordinance stands, as passed by the legislative body, as of the date of the recording of the commission's report with the legislative body. *If the commission disapproves the rejection* or amendment, *the action of the legislative body on the original rejection or amendment stands only if confirmed by a seventy-five percent (75%) vote of the legislative body of the municipality or by a unanimous vote of the legislative body of the county.*

If the commission does not file a report with the legislative body within forty-five (45) days, the action in rejecting or amending the ordinance becomes final."

(Emphasis added).

Applying these statutes to the instant facts leads then to the following analysis.

▬▬▬ When the council originally rejected the proposed amendment it was required to return the matter to the advisory plan commission by the provisions of section 510.[1] When it did so the advisory plan commission had forty-five (45) days within which to act, or the rejection by the council would have been final. The advisory plan commission did act by its vote reapproving the proposed amendment on February 23, 1981. It was then incumbent upon the council to confirm its rejection by a 75% vote if it did not wish the ordinance to become effective. Thus, when the council

---

1. Thus, the purported vote of the council to rescind the action of its presiding officer in sending the ordinance back to the plan commission was of no effect.

tabled its consideration of the ordinance it was not effectively preventing adoption of the amendment. Instead, pursuant to IC 18–7–4–509(a) the proposed amendment became effective at least upon the expiration of one hundred twenty (120) days after it was recertified to the council. *Town of Merrillville,* 382 N.E.2d at 191.

 Finally, the council argues that the ordinance lacked the mayor's vote and therefore has no force. It cites IC 18–1–3–6 which, in part, states:

> "No ordinance, order or resolution of the council shall become a law, or operative until it has been signed by the presiding officer thereof, and approved in writing by the mayor, or passed over his veto, as hereinafter provided, and whenever necessary, promulgated according to law."

The Common Council does not explain for us why this section should be applicable where an ordinance becomes law despite the action of the Common Council; that is, where the Plan Commission has disapproved the council's rejection of an ordinance and the council has failed to confirm its rejection. IC 18–1–3–6 relates to ordinances *passed* by the Common Council. The ordinance herein was rejected by the council but became effective as a matter of state law by virtue of the provisions of IC 18–7–4–509 and 510.

For the foregoing reasons, the decision of the trial court is affirmed.

HOFFMAN, P.J., and STATON, J., concur.