238 Ind. 57 (1958)
148 N.E.2d 563
THE TOWN OF HOMECROFT ET AL.
v.
MACBETH.
No. 29,504.
Supreme Court of Indiana.
Filed March 17, 1958.
*59 Henry M. Coombs and Frank E. Spencer, both of Indianapolis, for appellants.
William F. LeMond and William B. Patrick, both of Indianapolis, for appellee.
EMMERT, C.J.
This is an appeal from a judgment of the trial court reversing a decision of the Board of Zoning Appeals of the Town of Homecroft, Marion County, Indiana, which denied appellee's petition for a variance to erect a filling station on land owned by him in said town, and ordering the Board to issue to said appellee a building permit. No objection was made *60 in the trial court to the form of the judgment, and the errors presented by appellants' argument section of the original brief will be considered in the order therein presented.
The Town of Homecroft was incorporated in 1950, and according to the census of that year had a population of 659 people. On May 12, 1950, the Board of Town Trustees adopted a zoning ordinance, and an official zoning map attached thereto was made a part of the ordinance.
The entire town was zoned as a dwelling house district under Class U1. Section 3 prohibited the building of a dwelling with a back yard less than 25 feet in depth, and a building closer than 8 feet from the adjoining side property line.
Appellee's real estate was located on the southeast corner of the intersection of Madison Avenue and Southview Drive, extending 100.85 feet along Southview Drive and 208.76 feet along Madison Avenue. The building setback line along Madison Avenue was 40 feet, and along Southview Drive was 50 feet. Madison Avenue, which is State Road No. 431, was 40 feet wide; immediately west of this was an abandoned interurban right-of-way 40 feet wide, and immediately west of this was Madison Drive which was 40 feet wide. Southview Drive was 50 feet wide.
Section 18(k) provided:
"A `non-conforming use' is one that does not comply with the regulations of the use in the district, ward, or section in which it is situated. Any such non-conforming building or structure may be continued provided there is no material change other than necessary maintenance and repair to continue the present use. Any part of a building, structure or land occupied by such non-conforming *61 use, which use is abandoned, shall not again be used or occupied as a non-conforming use."
In 1933, the then owners of the land immediately east of appellee's land had constructed the present building at 6801 Madison Avenue for a restaurant. The building was 24 feet by 32 feet over all, but appellee could only obtain 575 square feet floor space for sale and display of his groceries. In 1941, before any zoning regulations were adopted, appellee had purchased the land and the building and has operated it as a grocery store. The trial court was fully warranted in finding that due to the small area of the lot and the present drift of grocery business to large supermarkets with off-street parking, the real estate was wholly unsuited for the operation of a grocery store. In 1952 appellee's business decreased 1%; in 1953 it decreased 6%; in 1954 it decreased 20%. At the time of the trial appellee's chief sales consisted of bread and milk, Coca-Cola and cigarettes. At the hearings it was uncontradicted that although the objectors did not want the grocery store to discontinue business, they were not willing to patronize it in order to keep it in business.
Madison Avenue through the town extends from the south to the north, bearing to the west approximately 15 degrees. North of appellee's real estate and across Southview Drive is a Tydol filling station operated by Paul Kritch. Automobile repair work is also done at this site. State Road 431 sustains a heavy motor vehicle traffic day and night. Most of the platted area of the town is west of this state highway, and at the time of the adoption of the ordinance the south end of appellee's lot was the southern boundary of the town. From the record it is not clear that the Tulip Drive area south of appellee's land has been annexed, but for the *62 purposes of this opinion it will be assumed that it has. There were pictures introduced in evidence of the Tydol filling station and the residence properties immediately east and south of appellee's lot. There were also introduced illustrations of a proposed cottage type filling station to be erected by the Pure Oil Company in the event a variance could be obtained.
In 1952 appellee had the lot listed for sale with the Studebaker Realty Company for 9 months; thereafter it was listed for sale by the Shine Realty Company. During all this time there was no offer received to purchase the real estate for a grocery business, none for a residence, and only one offer, which was reduced to an option, to buy the real estate for $17,000, made by the Pure Oil Company for the construction of a cottage type filling station.
The evidence is uncontradicted that filling stations erected and operated in conformity with the regulations of the State Fire Marshal's office do not increase the insurance rates of surrounding properties. Of the approximately 500 filling stations operated in Indianapolis there is less than one fire per month on an average.
The transcript was made of all the evidence and proceedings taken before the Board of Zoning Appeals, which was introduced in evidence at the hearing in the trial court. The objecting property owners at the hearing before the Board of Zoning Appeals made statements concerning their opinions that a filling station would depreciate the value of their property. None of them offered to rebut the evidence introduced by appellee that the refusal of a variance under the existing circumstances constituted an undue hardship on him by depriving him of the use of his property to such an extent that it became a taking of his property without compensation. The determination *63 of a petition for a variance cannot be determined by a poll of the sentiment of the neighborhood. Benner v. Tribbitt (1947), 190 Md. 6, 57 Atl.2d 346.[1]
Paragraph 16 of the petition for the writ of certiorari did not charge the zoning ordinance was void in its entirety, but asserted that it was invalid and unconstitutional as it affected his property under the existing circumstances. Appellee properly sought his remedy by petition for a variance before the Board of Zoning Appeals. City of E. Chicago v. Sinclair Ref. Co. (1953), 232 Ind. 295, 111 N.E.2d 459, and authorities therein cited. As we said in that case at page 309, "Each case must be determined on its own merits."
Zoning when done in a constitutional manner is a proper exercise of the police power of the state.[2]Euclid v. Amber Realty Co. (1926), 272 U.S. 365, 47 S.Ct. 114, 54 A.L.R. 1016, 71 L.Ed. 303. When it is done by a political subdivision of the state, it must be done pursuant to the statute which authorizes it. But it is also apparent that the power *64 to restrict the uses of private property under the police power should be exercised with caution, and that when the power in the first instance is vested in municipal officers, who are not trained in the history and traditions of the law, and who may be particularly subject to personal and political considerations, there exist grave dangers that owners may be deprived of their constitutional rights in the use of their property. The same dangers exist in this field as were noted by the Supreme Court of the United States in St. Joseph Stock Yards Co. v. United States (1936), 298 U.S. 38, 51, 52, 56 S.Ct. 720, 80 L.Ed. 1033, 1041, 1042. When an issue is presented by an owner that there has been an unlawful taking of his property without just compensation in violation of § 21 of Article 1 of the Indiana Constitution and in violation of the due process clause of the Fourteenth Amendment, it is for the courts to protect ultimately the owner's rights and decide the judicial question presented. In compliance with these constitutional requirements the Zoning Act of 1947, § 53-778, Burns' 1951 Replacement, subsection 4, empowered the Board of Zoning Appeals to "Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." In order to obtain a judicial review, §§ 53-783 to 53-788, Burns' 1951 Replacement, provided for a review of the decision of the Board of Zoning Appeals by writs of certiorari.
Appellants' first assertion of error involves the question of notice to bring the parties before the trial court *65 in the proceedings had to obtain the writ of certiorari. It arises out of an ambiguity apparent when § 53-784, Burns' 1951 Replacement, is construed with § 53-785, § 53-787 and § 53-788, Burns' 1951 Replacement. We will construe a statute to prevent an absurdity. Helms v. Am. Security Co. (1939), 216 Ind. 1, 22 N.E.2d 822; State ex rel. Glenn v. Smith, Trustee et al. (1949), 227 Ind. 599, 87 N.E.2d 813. Where different parts of a statute are in irreconcilable conflict, the later in position will control. Cox v. Timm (1914), 182 Ind. 7, 105 N.E. 479; Woodring v. McCaslin (1914), 182 Ind. 134, 104 N.E. 759. Where it is clear that words have been omitted which are necessary to make the statute workable and to give it complete sense, such may be read into the act to express the true legislative intent. State ex rel. 1625 E. Wash. Realty Co. v. Markey (1937), 212 Ind. 59, 7 N.E.2d 989.
Under § 53-784, Burns' 1951 Replacement, the Board of Zoning Appeals is not an adverse party. But § 53-785, Burns' 1951 Replacement, makes it quite clear it is a necessary party, or the court would have no jurisdiction to enter a rule against it to show cause why the writ should not issue. The words "and the time fixed for the return of the writ of certiorari by the board of zoning appeals" in the third paragraph of § 53-784, Burns' 1951 Replacement,[3] are in conflict with § 53-785, Burns' 1951 Replacement, for it is impossible to know at the time the petition for the writ is filed and notice thereon given when the *66 court will determine an issue presented by a return to the rule to show cause, or when the court will fix the return day to the writ if issued. The petitioner for the writ cannot know this, and he cannot fix a return day to the writ in the notice he serves on the adverse parties. Therefore, the above quoted words create an absurdity and irreconcilable conflict with the next section, and they are to be disregarded.
Section 53-785, Burns' 1951 Replacement, makes no provision for acquiring jurisdiction over the Board of Zoning Appeals to require it to show cause why the writ should not issue. The Legislature never intended the court should make a void order against the board over which it did not have jurisdiction. It is obvious that the last paragraph of § 53-784, Burns' 1951 Replacement,[4] contemplates notice to the Board of Zoning Appeals of the filing of the petition for the writ of certiorari. If this be given, then the trial court would have jurisdiction to enter the rule to show cause why the writ should not issue. What is contemplated by this section on notice is that notice of the petition for the writ should be served on the Board of Zoning Appeals, and to effectuate the evident legislative intent, the notice required to the Board of Zoning Appeals is notice of the filing of the petition for the writ of certiorari. The trial court did have jurisdiction over the adverse parties and the Board of Zoning Appeals, and the parties were before the court when the special judge was selected and qualified, and *67 there was no error in overruling appellants' objections to his jurisdiction to try the case.
Appellants next object that the Board of Zoning Appeals did not have jurisdiction to grant the relief requested by appellee. We have already quoted § 53-778 (4), Burns' 1951 Replacement, as to the statutory power of the Board to grant a variance, and it is well settled that an owner who asserts a zoning ordinance is unconstitutional as it applies to his property must first present the issue to the Board of Zoning Appeals. City of So. Bend v. Marckle (1939), 215 Ind. 74, 18 N.E.2d 764; City of E. Chicago v. Sinclair Ref. Co. (1953), 232 Ind. 295, 111 N.E.2d 459, supra. These cases overruled O'Conner v. Overall Laundry, Inc. (1933), 98 Ind. App. 29, 183 N.E. 134. The petition for the writ did state a cause of action, and there was no error in overruling the demurrer thereto.
Appellants' final ground for reversal is that the finding by the trial court was not sustained by sufficient evidence and was contrary to law. The operation of a filling station is a legitimate business, and under our present American system of transportation, it is a necessary and proper part of modern vehicle travel and transportation. The conduct of such a business is not a nuisance per se. If the operation of a filling station on appellee's land should become a nuisance, any nearby land owner affected thereby has his remedy. The State has the control of 160 ft. right-of-way, 40 ft. of it presently being used as State Road 431 that carries a heavy traffic day and night. There is nothing to prevent the State from making this a dual lane highway which will increase the traffic. The Town of Homecroft is not in a position to stop or curtail any of the traffic on this highway. The zoning authorities knew *68 the highway was there when this area was zoned for residence use on the east side. Such traffic necessarily causes noise, smoke, fumes, dust and at times the throwing of some dirt, grime and road scum into the air. The prevailing winds are from the west so that whatever is thrown into the air may drift over to the lots along the east side of the highway. The objectors south and east of appellee's lot are charged with the knowledge of this condition when they purchased their real estate.
We are not dealing with a situation where an owner seeks a variance in a secluded and quiet section of a town. It is beyond the power of any zoning ordinance to turn this area for some distance east of Madison Avenue into a secluded and desirable residential district; the facts of modern day traffic prevent that. Appellee's lot, in view of the building set back lines and its dimensions, is not a desirable residential lot, even assuming that the traffic on Madison Avenue could be reduced to a mere trickle. An attempt to zone for residential uses only, property fronting on a busy highway, in order to provide a beautiful and dignified village frontage can be unreasonable under restriction of the property to uses to which it is not adapted. Dowsey v. Village of Kensington (1931), 257 N.Y. 221, 177 N.E. 427, 86 A.L.R. 642. "An ordinance which permanently so restricts the use of property that it cannot be used for any reasonable purpose goes, it is plain, beyond regulation, and must be recognized as a taking of the property. The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden." Arverne Bay Construction Co. v. *69 Thatcher (1938), 278 N.Y. 222, 232, 15 N.E.2d 587, 117 A.L.R. 1110. The ordinance in question precludes appellee's use of his property for any purpose to which it is reasonably adapted. The ordinance is unconstitutional as applied to the appellee and the finding of the trial court was sustained by sufficient evidence and was not contrary to law.
Judgment affirmed.
Bobbitt, Landis, Achor and Arterburn, JJ., concur.
NOTE.  Reported in 148 N.E.2d 563.
NOTES
[1] "... But in restricting individual rights by exercise of the police power neither a municipal corporation nor the state legislature itself can deprive an individual of property rights by a plebiscite of neighbors or for their benefit. Such action is arbitrary and unlawful, i.e., contrary to Art. 23 of the Declaration of Rights and beyond the delegated power of the town of Denton to pass reasonable ordinances. Storck v. Baltimore, 101 Md. 476, 61 A. 330; Eubank v. City of Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156, 42 L.R.A., N.S., 1123 (cited and quoted in Pocomoke City v. Standard Oil Co., supra, and Goldman v. Crowther, 147 Md. 282, 128 A. 50, 38 A.L.R. 1455)." Benner v. Tribbitt (1947), 190 Md. 6, 20, 57 Atl.2d 346.
[2] "Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property." White's Appeal (1926), 287 Pa. 259, 264, 134 Atl. 409.
[3] "The notice shall state that a petition for a writ of certiorari has been filed in the circuit or superior court of the county, as the case may be, asking for a review of the decision of the board of zoning appeals, designating the premises affected and the date of the decision and the time fixed for the return of the writ of certiorari by the board of zoning appeals." Section 53-784, Burns' 1951 Replacement.
[4] "The service of the writ of certiorari by the sheriff on the chairman or secretary of the board of zoning appeals shall constitute notice to the board and to the city or any official or board thereof charged with the enforcement of the zoning ordinance, and no further summons or notice with reference to the filing of such petition shall be necessary." Section 53-784, Burns' 1951 Replacement.