Lewis FIELD, Appellant (Defendant Below),

v.

AREA PLAN COMMISSION OF GRANT COUNTY, INDIANA, Appellee (Plaintiff Below).

No. 2–180A11.

Court of Appeals of Indiana, Fourth District.

June 17, 1981.

Patrick N. Ryan and Jack B. Welchons, Ryan & Welchons, Marion, for appellant.

Warren Haas, Marion, for appellee.

MILLER, Judge.

Lewis Field appeals the judgment of the Grant Circuit Court finding him in violation of the Marion, Indiana Area-Wide Zoning Ordinance—Master Plan Ordinance 23–1974 (Ordinance) which prohibits maintenance of a "junkyard" in a residential zone without first obtaining a special exception. The trial court ordered Field to remove the offending material and permanently enjoined him from permitting similar material to accumulate.

On appeal, the following issues are presented for review:

1) Did the trial court err in denying Field's motion to dismiss the complaint pursuant to Ind. Rules of Procedure, Trial Rule 12(B)(6)?

2) Did "junkyard" as defined by the ordinance contemplate only maintenance of a *commercial* enterprise and not a location where junk was merely collected?

3) Was there sufficient evidence to support the trial court's judgment?

4) Did a mandatory injunction lie to remove chattels as opposed to structures?

We affirm.

## FACTS

The subject-matter of the current dispute is residential property owned and occupied by Field located in Marion, Indiana and zoned Residential–2 which is primarily for single family dwellings. On June 19, 1978 the Area Plan Commission of Grant County, Indiana (Plan Commission) filed a verified complaint alleging Field was maintaining a common nuisance, as defined in Ind.Code 18–7–4–90,[1] at his residence and sought both mandatory and prohibitory injunctions pursuant to IC 18–7–4–91.[2] Specifically, the Ordinance in question prohibits the maintenance of a "junkyard" in a district zoned R–2, and defines "junkyard" as follows:

> "A place, usually outdoors, where waste or discarded used property other than organic matter is accumulated and/or stored and is or may be salvaged for reuse or resale, including but not limited to one or more unlicensed or inoperable motor vehicles."

On June 26, 1978 Field filed a motion to dismiss under T.R. 12(B)(6), claiming only commercial enterprises were prohibited under the Ordinance and that the complaint did not affirmatively allege Field was selling materials on his premises. The motion was denied and a bench trial followed on May 31, 1979.

A large portion of the testimony at trial centered on the description of materials located on the property at various times during the proceedings as witnessed by the Director of the Plan Commission, Betty Pence. Immediately before the verified complaint was filed, Pence observed various items on the property[3] including plastic, wheels, tires, pieces of antennas and lawn mowers, various metals including steel, iron and aluminum, and other debris. Several motor vehicles were also observed including two pick-up trucks and a station wagon. One of the pick-up trucks did not have a license plate. The other pick-up had an expired inspection sticker, a flat tire, a broken windshield and was partially supported by a cement block or wheel. This latter truck was equipped with a hatch top behind the cab; both the cab and hatch top were filled with various items including plastic, metal, wood and paper, leaving no visible room for a driver. The station wagon lacked a current license plate, had sunken into the soil and had vegetation growing around it. Since the suit was filed, several of the latter vehicles' windows had been broken.

Seven pictures of the property taken approximately five months after the complaint was filed were admitted into evidence showing what appear to be various metal cans and containers, a metal folding chair (apparently rusted), wire fences, plastic bags, tires, a pick-up truck and sundry items. There was testimony indicating at least two of the pictures depicted conditions similar to those existing at the time the suit was filed and at the time of trial.

On August 9, 1979 the trial court issued its decision which in part found Field was maintaining a junkyard in violation of the zoning ordinance and:

> "3. That the defendant is hereby ordered to remove all waist [sic] or discarded used property other than organic matter which has been accumulated or which has been stored and is or may be salvaged for re-use or re-sale, including but not limited to any unlicensed or inoperable motor vehicles on said property.

---

1. IC 18–7–4–90 states that violations of ordinances enacted pursuant to the area planning law (IC 18–4–7) may be declared common nuisances. It is not disputed the Ordinance in question was enacted pursuant to such statute.

2. This latter statute was repealed but substantially re-enacted in 1979 as Ind.Code 18–7–4–1015.

3. Ms. Pence did not specify where on the property the items were located but pictures taken five months later, discussed *infra*, reveal objects on the front and side lawns.

4. That the defendant is hereby permanently enjoined and restrained from hereafter permitting waist [sic] or discarded used property other than organic matter to be accumulated and/or stored on the property which is or may be salvaged for re-use or re-sale, including but not limited to any unlicensed or inoperable motor vehicles."

## DECISION

### The Motion to Dismiss

In his Motion to Correct Errors, Field proposes two arguments to support his allegation of error in the trial court's denial of his Motion to Dismiss. Field first contends a junkyard is necessarily a business enterprise and the complaint was deficient in not suggesting Field used his yard for business purposes. Secondly, he argues:

"The business nature of a junkyard is implicit in the definition, . . . . To classify an untidy residential yard as a junkyard would be arbitrary and unreasonable, and would deny homeowners due process of law. It would violate the 5th and 14th Amendments to the Federal Constitution, and Article I, § 12, and § 21 of the Indiana Constitution."

Given the liberality with which we review the sufficiency of a complaint, we do not believe Field's allegations, if taken to be true, would sustain a motion to dismiss for failure to state a claim upon which relief could be granted. In reviewing a complaint's sufficiency "[w]e must consider whether in the light most favorable to the plaintiff and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim." *Sekerez v. Gehring* (1981) Ind.App., 419 N.E.2d 1004, *quoting Parker v. State* (1980) Ind.App., 400 N.E.2d 796, 798.

"[I]n a typical 12(B)(6) situation, a complaint is not subject to dismissal unless it *appears to a certainty* that the plaintiff would not be entitled to relief under *any set of facts. Sacks v. American Feltcher [sic] National Bank and Trust Co.* (1972), [258 Ind. 189] 279 N.E.2d 807. See also *Gladis v. Melloh* (1971), [149 Ind.App. 466]

273 N.E.2d 767; *Wyant v. Lobdell* (1972), [150 Ind.App. 675] 277 N.E.2d 595. The rules do *not* require that the complaint state all the elements of a cause of action. It must be remembered that our new rules are based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation. Other means less drastic than dismissal of the action can be used to clarify the theory and basis for the cause of action. Among these are a Motion for a more definite statement under TR. 12(E), our very broad discovery rules, and the pretrial conference under TR. 16(A)(1)." (Emphasis in the original). *Sekerez v. Gehring, supra, quoting State v. Rankin* (1973) 260 Ind. 228, 294 N.E.2d 604, 606.

■ The Plan Commission's verified complaint clearly alleged the maintenance of a common nuisance under the appropriate statute and ordinance at the residence in question, and included several pictures of the allegedly offensive material. Even assuming, arguendo, the maintenance of a commercial enterprise, in the sense that junk was bought and/or sold on the premises, was a necessary element, (an incorrect assumption as discussed later in this opinion) the complaint as drafted did not preclude proof of this element. Therefore, at the time of Field's motion to dismiss, it did not appear "to a certainty that the plaintiff would not be entitled to relief under any set of facts." *Sekerez v. Gehring, supra. See Noblesville City Plan Commission v. Gatewood* (1963) 134 Ind.App. 609, 189 N.E.2d 426 (in actions to enjoin violation of a zoning ordinance, complaint need only allege existence of ordinance and its violation by defendant). We believe the complaint sufficiently put Field on notice of the theory and basis for the cause of action, and the trial court did not err in denying his motion in this regard.

■ Similarly, the allegation of constitutional infirmity as contained in Field's motion to correct errors would not have justified the granting of his motion to dismiss.

Field claims the ordinance cannot proscribe activity on his land which is not commercial in nature without violating his due process rights.[4] However he appears to readily admit that the prohibition of sales of junk on his property would satisfy constitutional requirements. Again, since under the complaint the Plan Commission could have ultimately proven the facts allegedly necessary under such a construction, the trial court, at that stage in the proceedings, was not authorized to grant the motion to dismiss. We therefore find no error in the denial of Field's motion.

*Sufficiency of the Evidence I: Did the Ordinance Defining "Junkyard" Contemplate Only a Commercial Enterprise Requiring the Evidence to Show Junk was Actually Bought and Sold on the Premises?*

Field next attacks the trial court's decision as contrary to law and not supported by sufficient evidence since there was no proof Field ran a commercial enterprise. He contends the definition of "junkyard" contained in the ordinance necessarily implies a business enterprise, i. e. the buying and selling of junk. The Plan Commission maintains the Ordinance does not contain such a limitation, but only sets out certain zoning districts where the storage and accumulation of discarded inorganic material would be offensive. Upon a plain reading of the Ordinance, we must agree with the Plan Commission.

■ In determining the meaning of an ordinance, applying the same rules of construction as are used when a statute is involved, *Zorger v. City of Greensburgh* (1877) 60 Ind. 1; *In re Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 177 N.E.2d 34; *Metropolitan Board of Zoning Appeals of Marion County v. Shell Oil Co.* (1979) Ind.App., 395 N.E.2d 1283, we initially apply the rule requiring an interpretation in accord with the municipality's clear intent as manifested by the plain wording of the

ordinance. *See Gene B. Glick Co. Inc. v. Marion Construction Corp.* (1975) 165 Ind. App. 72, 331 N.E.2d 26. Further judicial construction is unnecessary and impermissible unless the statute or ordinance is ambiguous. *E. g., Sue Yee Lee v. Lafayette Home Hospital, Inc.* (1980) Ind.App., 410 N.E.2d 1319.

■ We find no such ambiguity is present here. The ordinance in question, quoted above and reiterated here, defines "junkyard" as follows:

"A place, usually outdoors, where waste or discarded used property other than organic matter is accumulated and/or stored and is *or may be* salvaged for *reuse or resale*, including but not limited to one or more unlicensed or inoperable motor vehicles. (Emphasis added.)"

As emphasized above, the Ordinance contains disjunctive language which clearly defines a junkyard as a place where certain materials are accumulated and either are or "may be" salvaged. The word "or" indicates "an alternative between different or unlike things, states or actions. . . ." Webster's Third New International Dictionary (1976). "[T]he words 'and' or 'or' as used in statutes are not interchangeable, being strictly of a conjunctive and disjunctive nature respectively, and their ordinary meaning should be followed if it does not render the statute dubious." *Sekerez v. Youngstown Sheet & Tube Co.* (1975) 166 Ind.App. 563, 567, 337 N.E.2d 521, 524 *quoting* 82 C.J.S. *Statutes* § 335, at 673. In the Ordinance before us there is no requirement that the materials are in fact salvaged or sold, but only that they have such potential. Furthermore, materials with the potential for *reuse* as well as resale are clearly within the definition. Under the plain and ordinary meaning of the words used, we cannot agree that only buying and selling of junk is prohibited under the Ordinance.

The Ordinance before us is therefore clearly distinguishable from an ordinance

---

4. Field does not present a cogent argument in this regard but appears to allege the Ordinance would prevent him from enjoying his property in any manner which he desires even without regard for the rights of his neighbors.

construed in *Lake County v. First National Bank of Lake Forest* (1979) 68 Ill.App.3d 693, 25 Ill.Dec. 123, 386 N.E.2d 394, a case which Field claims is directly in point. In that case the definition of "junkyard" was as follows: "Any land or structure used for a salvaging operation, including, among other things, the storage *and sale* of waste paper, rags, scrap metal, and discarded materials, and the collecting, dismantling, storage *and salvaging* of unlicensed, inoperative vehicles." (Emphasis added.) Since the ordinance used conjunctive terminology, the Illinois Appellate Court required proof of sale before declaring a violation. The Ordinance here does not contain a similar requirement, and we cannot imply one given the plain meaning of the language used.

■ Finally, Field cites several authorities in support of his argument that a "junkyard" is generally understood to mean a business entity where junk is collected *and* sold. We must disagree. Webster's Third New International Dictionary (1976) defines "junkyard" as "a yard used *to keep usu[ally]* resalable junk." (Emphasis added.) "Junk," in turn, is defined as "(1): old iron, glass, paper, cordage, or other waste that may be treated so as to be used again in some form . . . (2): secondhand, worn, or discarded articles of any kind *having little or no commercial value.*" (Emphasis added.) Common usage of the term therefore does not necessarily preclude the mere storage of junk and the Ordinance does in fact define junkyard in its ordinary sense. Con-

sequently, Field could collect and store junk on his premises, sell it at another location, and still be maintaining a junkyard under both the Ordinance and under the term's common meaning. Based on the above it was not necessary under the Ordinance to prove Field bought and sold junk on his premises and the lack of such evidence did not render the trial court's decision contrary to law.

■■ Field also appears to contend the inclusion of "untidy" residential yards under the Ordinance's definition of a "junkyard" results in an arbitrary and unreasonable classification and thereby denies homeowners due process of law. We acknowledge the general rule to be:

"A zoning regulation may control the *use* to which real estate in particular localities may be put, but it must be within the limitations and restrictions imposed by statutory or constitutional provisions, and it must have a *real* and *substantial* relation to the public health, safety, morals, or general welfare." (Emphasis added.)

30 I.L.E. *Zoning* § 8 at 647 (1960); *accord,* 101 C.J.S. *Zoning* § 54 (1958). However, Field fails to cite any authority or present any cogent argument suggesting that the prohibition against the use of residential property in residential zones for the collection and storage of junk, or any prohibition against similar uses, does not bear a reasonable and substantial relation to the public health and general welfare.[5]

---

**5.** Rather, in his brief Field cites four cases only for the general proposition that constitutional guarantees, including the right to due process, forbid arbitrary classifications in zoning laws, and concludes that such a denial is present under the facts of the instant case. In three of the cases cited, the Indiana Courts overturned decisions of the Board of Zoning Appeals which refused to allow construction of commercial facilities in residential areas as unconstitutional takings. In each case construction was sought in areas no longer suited for residential use. *Board of Zoning Appeals of New Albany v. Koehler* (1963) 244 Ind. 504, 194 N.E.2d 49 (permit sought to construct shopping center in large and growing commercial section); *Town of Homecroft v. Macbeth* (1958) 238 Ind. 57, 148 N.E.2d 563 (variance sought to erect filling station on busy highway); *Metro-*

*politan Bd. of Zoning Appeals v. Sheehan Constr. Co.,* (1974) 160 Ind.App. 520, 313 N.E.2d 78 (variance to construct neighborhood shopping facility in growing commercial area.) Finally, in *Board of Zoning Appeals v. LaDow* (1958) 238 Ind. 673, 153 N.E.2d 599, our Supreme Court held the denial of a permit to construct a filling station in a *commercial* zone was a denial of due process where all the evidence indicated filling stations had no appreciably greater effect on the public welfare than other commercial enterprises. These cases are clearly inapplicable to the facts under consideration. There is no evidence or allegation that the residential area is undergoing commercial proliferation and Field has never petitioned for a variance nor been denied a permit to operate a junkyard at his residence. Where a person seeks to challenge the constitutionality of a

To the contrary, it is firmly established that reasonable zoning regulations are a proper exercise of the state's police power, and are not unconstitutional merely because they regulate the uses of private property. *E. g., Town of Homecroft v. Macbeth* (1958) 238 Ind. 57, 148 N.E.2d 563; *Metropolitan Bd. of Zoning Appeals v. Sheehan Construction Co.* (1974) 160 Ind. App. 520, 313 N.E.2d 78. Significantly, we note Indiana has upheld the zoning of single family residential areas as bearing a substantial relationship to the public safety and general welfare. In *Antrim v. Hohlt* (1952) 122 Ind.App. 681, 108 N.E.2d 197, the Court denied a variance to construct an apartment building in a single family residential zone on the ground that it would constitute a substantial change in the zoning plan. The Court explained the nature of the public's interest in maintaining the area's residential character:

"The courts have been very careful in constructing comprehensive zoning ordinances to protect the rights of the municipality in setting up single dwelling areas and in defining residential areas. A single family restriction is a valid zoning regulation since it bears substantial relation to the public safety and to the general welfare. *The quiet of natural surroundings and vegetation in a residential district as opposed to the increased risks and annoyances of various natures by reason of a change from a single and two-family district to an area of apartment buildings bears substantial relationship to the public safety and general welfare as to constitute a valid zoning regulation.* Yokley, Zoning Law and Practice, § 60, p. 84; *Sullivan v. Anglo-American Inv. Trust,* 1937, 89 N.H. 112, 193 A. 225; *Cochran v. Preston,* 1908, 108 Md. 220, 70 A. 113, 23 L.R.A., N.S., 1163." (Emphasis added.)

*Id.* at 687–88, 108 N.E.2d at 199. In view of the state's obvious reasonable and legitimate interest in zoning areas for single family residential use, we regard Field's argument—that as a matter of law the prohibition of the collection and storage of junk, as well as the sale of such items, in residential areas is a denial of due process—as wholly without merit.[6]

II: *Was the Evidence Sufficient To Show Field Maintained a "Junkyard" Assuming a Commercial Enterprise is not an Element Under the Ordinance?*

Field challenges the sufficiency of the evidence to sustain the court's finding that he maintained a "junkyard" even assuming a commercial enterprise is not an element under the Ordinance. Specifically, in his motion to correct errors, Field contends "[t]here was no evidence of any inorganic, salvable, waste on the premises, and no evidence of any inorganic, salvable, second hand, discarded property. Furthermore, plaintiff did not prove the presence of any unlicensed or inoperable car or truck there." As explained in his brief, Field reaches the latter conclusion apparently since no one attempted to start any of the vehicles. We believe the evidence was ample to prove Field's violation of the Ordinance.

In determining the sufficiency of the evidence, this Court on review may only consider that evidence and the reasonable inferences therefrom which support the trial court's judgment, and if there is any probative evidence to support the trial court's decision, it is the duty of this Court to affirm. *E. g., Yeager and Sullivan, Inc. v. O'Neill* (1975) 163 Ind.App. 466, 324 N.E.2d 846; *Cox v. Schlachter* (1970) 147 Ind.App. 530, 262 N.E.2d 550.

zoning ordinance as applied to their property, the issue must first be presented to the board of zoning appeals. *E. g., Board of Zoning Appeals v. LaDow, supra; Town of Homecroft v. Macbeth, supra.*

**6.** Additionally, under the circumstances, we have no sympathy for Field, who apparently ignores the rights of his neighbors to enjoy their property without unreasonable interfer-

ence. Notably, Field's activities may well destroy the value and marketability of his neighbors' property, provide an attractive nuisance for neighborhood children, lure uninvited scavengers, provide cover and breeding grounds for rodents and insects, and generally constitute a threat to the health, safety and welfare of neighborhood residents.

■ The evidence most favorable to the Plan Commission, as related earlier, reveals that, over a one year period from the filing of the complaint to the trial date, Field's yard contained numerous items made of plastic, metal and other inorganic materials. Even more clearly in violation of the ordinance was the presence of three motor vehicles, none of which were properly licensed and inspected for current use. The definition of "junkyard" clearly prohibits the accumulation of such unlicensed vehicles. Furthermore, Field can not seriously contend these vehicles were organic. Nor were they in current use in view of their various states of disrepair and their partial burial up to the wheels in the surrounding soil. There was a reasonable inference from the testimony and from the photographic displays that parts of these vehicles were capable of being salvaged. We find the evidence and the reasonable inferences therefrom amply support the trial court's judgment.

*Injunction*

Field finally argues language in the court's order directing him to remove the junk was mandatory in nature. He further claims the statute permits mandatory injunctions only where structures are involved. The Plan Commission contends any equitable relief may be invoked to enforce the zoning ordinances.

The statute in issue is Ind.Code 18–7–4–91 which provides:

"The plan commission, . . . my institute a suit for injunction in the circuit court of the county, to restrain an individual or a governmental unit from violating the provisions of this act, or of an ordinance enacted pursuant to its terms. The plan commission, . . . may also institute a suit for a mandatory injunction, directing an individual or a governmental unit to remove a structure, erected in violation of the provisions of this act, or of an ordinance enacted pursuant to its terms."[7]

Field therefore urges this Court to employ the maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) to interpret the statute as excluding mandatory relief except for the removal of structures. On the other hand, the Plan Commission directs our attention to IC 18–7–4–1014(b)[8] which provides: "Each area plan commission shall invoke *any* legal, equitable, or special remedy for the enforcement of the area planning law or any ordinance adopted or action taken under the area planning law." (Emphasis added.)

■ It is our opinion, however, that the argument presented by Field is moot. As noted earlier, the court entered the following order with respect to injunctive relief:

"3. That the defendant is hereby ordered to remove all waist [sic] or discarded used property other than organic matter which has been accumulated or which has been stored and is or may be salvaged for re-use or re-sale, including but not limited to any unlicensed or inoperable motor vehicles on said property.

4. That the defendant is hereby permanently enjoined and restrained from hereafter permitting waist [sic] or discarded used property other than organic matter to be accumulated *and/or stored* on the property which is or may be salvaged for re-use or re-sale, including but not limited to any unlicensed or inoperable motor vehicles." (Emphasis added.)

In his brief, Field argues only that paragraph 3 of the Order was improper. Although paragraph 3 orders Field to remove the offending material, paragraph 4 restrains him from "hereafter" permitting the accumulation and storage of waste on his property. The third paragraph, to which Field objects, is therefore, in effect, surplusage since the fourth paragraph clearly prohibits him from allowing waste to be stored in its present location. The practicalities of the instant case require affirmative conduct to achieve compliance with the Ordinance and the injunction. If Field does

---

7. In 1979, IC 18–7–4–91 was repealed and substantially re-enacted as IC 18–7–4–1015.

8. The predecessor statute, repealed in 1979, was IC 18–7–4–25(10).

not remove the waste from his residence he will be in violation of *both* portions of the court's order, *including the prohibitory language in paragraph 4*, to which Field does not object. In such event the trial court is clearly empowered to charge Field with contempt for disobeying its order. IC 34–1–10–10; *Lake-O'-The Woods Club v. Martinal* (1958) 239 Ind. 31, 154 N.E.2d 498; *Denny v. State* (1932) 203 Ind. 682, 182 N.E. 313; *Bottoms v. B. & M. Coal Corp.* (1980) Ind.App., 405 N.E.2d 82.

 Although it is not necessary to our opinion, we believe the narrow construction proposed by Field would produce an absurd result. Rules for the construction of statutes are designed to aid in the ascertainment of legislative intent and it cannot be presumed that the legislature intended its enactments to be applied in an illogical or absurd manner. *E. g., Pryor v. State* (1973) 260 Ind. 408, 296 N.E.2d 125; *State v. St. Joseph's Hospital of South Bend, Inc.* (1979) Ind.App., 398 N.E.2d 1325, 1329; 26 I.L.E. *Statutes,* §§ 103, 111 (1960). Although IC 18–7–4–91 *allows* the institution of a suit for mandatory injunction to remove structures, we cannot impute it to *forbid* a court from requiring a person in violation of a zoning ordinance to engage in affirmative conduct which will abate the violation. Such a result would defeat the express legislative intent to provide for and require enforcement of reasonable zoning regulations. IC 18–7–4–90–91; IC 18–7–4–1014(b).

Moreover, under circumstances similar to the case at bar, there does not appear to be any rational basis for the distinction urged:

"The principles upon which mandatory and prohibitory injunctions are granted do not materially differ; courts are, however, more reluctant in granting the mandatory writ. If a party seeking an injunction complains of a passive condition existing at the time without affirmative acts on the defendant's part, affirmative action is necessary and a mandatory injunction will issue; but, if the thing complained of results from present and continuing affirmative acts, a prohibitory injunction merely ordering the defendant to refrain from doing such acts will issue, since passiveness on his part will remedy the condition." (Footnotes omitted.)

16 I.L.E. *Injunction* § 3 at 6 (1959). In the majority of instances a prohibitory injunction provides a sufficient remedy, but a court is normally vested "with a broad discretionary power to shape and fashion injunctive relief to fit particular facts, circumstances, and equities of the case before it." 43A C.J.S. *Injunctions* § 235 at 512 (1978). "Relief afforded by equity need not be confined to preventative measures, but may be extended to compel affirmative action by issuance of a mandatory injunction when necessary." 16 I.L.E. *Injunction* § 3 at 3 (Supp.1980); *accord Lynch v. Keck* (1970) 147 Ind.App. 570, 263 N.E.2d 176.

 Were we to interpret Field's argument as proposing that the statute only allows prohibition of the accumulation of materials acquired *after* the time of the order, it would result in a strained and absurd construction of the statute. It is the maintenance of a passive condition which constitutes the type of offense involved here resulting in a continuing violation of the ordinance. Thus, under the statute and in view of the purpose of the act, we believe the legislature intended to enjoin the maintenance of a common nuisance. Furthermore, the specific language of IC 18–7–4–1014(b) mandating the Plan Commission to invoke *any* equitable remedy justifies our conclusion.

Thus, in several Indiana cases similar remedies have been upheld under the statute involved here, although the question now confronted was not precisely raised. For example, a strikingly similar situation was presented in *DeSchamps v. Board of Zoning Appeals* (1961) 241 Ind. 615, 174 N.E.2d 336 where the Board sought an injunction against the operation *and maintenance* of an auto wrecking business in a residential zone. The trial court's injunction specifically ordered DeSchamps to cease using his property for such purposes and expressly ordered him "to remove all wrecked, dismantled, junked, or stripped

automobiles and trucks, and parts thereof, from said premise within 120 days." Relying in part on the enforcement statute involved here, IC 18–7–4–91, our Supreme Court upheld the trial court's injunction. *See Linville v. Shelby County Plan Commission* (1972) 258 Ind. 467, 281 N.E.2d 884 (affirming trial court's judgment granting an injunction prohibiting operation and maintenance of an automobile wrecking yard and/or junkyard and ordering *removal* of the same); *see also Spurling v. Area Plan Commission of Evansville* (1978) Ind. App., 381 N.E.2d 507.

Moreover, we believe the practical difficulties encountered in framing an injunction in prohibitory terms does not deprive a court of its equitable powers. For example, in *Metropolitan Development Commission of Marion County v. Mullin* (1979) Ind.App., 399 N.E.2d 751, (originally a Memorandum Decision specifically designated "For Publication" under Ind. Rules of Procedure Appellate Rule 15(A)(3)), this Court ordered the issuance of an injunction against the maintenance of a residence in violation of an ordinance specifying 17 conditions for conducting home occupations. Noting the possible difficulty in wording the decree affirmatively (i. e. in mandatory terms) this Court suggested it might be more appropriate to use negative language requiring the defendant to cease violating the ordinance. The above authorities clearly authorize a court to fashion injunctive relief to meet the circumstances of the case before it.

Affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.