Paul Andrew **SAURER**, Appellant–
Defendant,

v.

**BOARD OF ZONING APPEALS and Co-
lumbus–Bartholomew County Depart-
ment of Building and Zoning Adminis-
tration, Appellees–Plaintiffs.**

No. 03A01–9305–CV–171.

Court of Appeals of Indiana,
First District.

Feb. 28, 1994.

David W. Stone, IV, Anderson, for appellant-defendant.

Cynthia A. Boll, Jones, Patterson, Boll & Tucker, Columbus, for appellees-plaintiffs.

BAKER, Judge.

It has long been stated that one person's trash is another person's treasure. Today we decide whether one man's personal property in his yard constitutes junk or scrap prohibited by a county zoning ordinance.

Appellant-defendant Paul A. Saurer challenges the trial court's finding that he maintained a junkyard on his real estate in violation of Section 5(28) of the Bartholomew County zoning ordinance as alleged by appellee-plaintiffs Bartholomew County Board of Zoning Appeals and Columbus–Bartholomew County Department of Building and Zoning Administration (collectively Zoning Board). The sole issue presented for our review— whether the trial court abused its discretion by enjoining Saurer from continuing the maintenance of a junkyard and ordering him to remove certain items of junk from his real estate—depends upon a determination of what constitutes junk or scrap and whether Saurer's property falls within that definition.

## FACTS

The undisputed facts relevant to this appeal are that Saurer is the owner of real property along U.S. 31 in Bartholomew County, Indiana. Saurer's real property is in a rural area zoned as C–4 or roadside commercial.[1] Saurer keeps virtually everything but the kitchen sink outdoors including the following: rusted farm machinery, rusted shelving, a toilet, an inoperable satellite dish, a broken door frame, numerous unlicensed automobiles including a truck, a van, a boat, and an automobile without a trunk lid, a truck camper-top, a boat trailer, a trailer used for hauling, rusted storage tanks, rusted propane or fuel tanks, a pile of tires and rusty wheels, several piles of metal and wood, a pile of buckets, pans, and other miscellaneous items, unlicensed old tractors, twenty-seven building trusses covered by a tin roof with various items stored therein, unlicensed semi-trailers, roasters, and stainless steel kitchen tables.[2]

In late November or early December 1991, the Office of Technical Code Enforcement, a division of the Building and Zoning Administration, received complaints regarding Saurer's property. On December 24, 1991, Junior Zoning Board Officer Richelle Wakefield inspected and took photographs of Saurer's property. Wakefield believed that the condition of Saurer's property presented numer-

---

1. Section 15(C) of the zoning ordinance provides:

   A Roadside Commercial Use is a commercial use primarily of a retail or service nature and includes the following:
   (1) Local Business Uses
   (2) Department Store
   (3) Hotel

   (4) Veterinary Hospital for Small Animals. Record at 74.

2. Photographs of Saurer's property also show many items which we are unable to identify. This is of no consequence, since these items are not involved in this appeal. See infra footnote 3.

ous violations of Section 5(28) of the county zoning ordinance. Section 5 provides:

> 28. JUNKYARD, INCLUDING AUTO-MOBILE WRECKING—A lot or a part thereof used for the storage, keeping, dismantling, abandonment or sale of junk, scrap metal, scrap vehicles or scrap machinery or parts thereof.

Record at 69. The zoning ordinance does not define junk or scrap. However, Section 19 of the zoning ordinance provides that a junkyard is a conditional use which may be permitted only in industrially zoned I1 or I2 districts.

Wakefield sent Saurer a letter concerning the violations and gave him until March 10, 1992, to move construction materials and unlicensed vehicles into a building and to remove other items from his property. When Wakefield conducted a second inspection on March 10, 1992, she discovered that Saurer's property was in the same condition as before, except that Saurer had covered the tractors with tarp. Wakefield took additional photographs that day.

On June 17, 1992, Wakefield and her supervisor, James Wray, conducted a third inspection and took a third set of photographs. On July 22, 1992, the Zoning Board filed an injunction action asking the court to order Saurer to clear and remove all unlicensed or inoperable vehicles, farm machinery, semi-trailers, trailers, boats, used construction materials, and miscellaneous debris from his property, and to enjoin him from continuing the operation and maintenance of a junkyard on his property in violation of Section 5(28) of the county zoning ordinance.

At Saurer's request the parties met on September 30, 1992, at which time Wakefield took additional photographs. Saurer agreed to correct any violations and was given until December 31, 1992, to do so. On January 5, 1993, Wakefield inspected Saurer's property and took a fifth set of photographs. Wakefield believed Saurer's property was still in violation of the zoning ordinance, so the Zoning Board proceeded with its injunction action against Saurer.

Following hearings on January 8 and 15, 1993, the trial court held that Saurer maintained a junkyard on his property in violation of Section 5(28) and enjoined him from continuing its operation and maintenance. The trial court suspended the injunction for thirty days as to miscellaneous debris, junk, scrap metal, scrap vehicles, scrap machinery or parts thereof, including construction material and kitchen equipment, and for one year as to the old tractors, farm machinery and building trusses, during which time Saurer was to remove these items to bring his real property into compliance with the zoning ordinance. Saurer appeals only the trial court's finding that his tractors, semi-trailers, building trusses, roasters, and kitchen tables are junk or scrap.[3]

## DISCUSSION AND DECISION [4]

### I. Standard of Review

The grant or denial of an injunction lies within the sound discretion of the trial court and will not be overturned unless it was arbitrary or amounted to an abuse of discretion. *Cooper v. Calandro* (1991), Ind. App., 581 N.E.2d 443, 445, *trans. denied.* We will reverse the trial court's judgment if the findings of fact are clearly erroneous. *Id.* Findings of fact are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* In seeking an injunction for a zoning violation, the moving party must prove the existence of a valid ordinance and a violation of that ordinance. *Metropolitan Dev. Comm'n of Marion County v. Goodman* (1992), Ind. App., 588 N.E.2d 1281, 1285.

### II. Junk and Scrap

Saurer does not dispute that Section 5(28) is a valid zoning ordinance which applies to

---

3. Although the trial court ordered Saurer to remove many items other than his tractors, trailers, trusses, roasters, and tables from his property, he waived any error regarding these items by failing to address them in his brief. *See* Ind.Appellate Rule 8.3(A)(7).

4. Prior to the oral argument held on February 16, 1994, Chief Judge Sharpnack discussed the reasons why he did not recuse himself, as requested by Saurer's motion, and how his decision complies with the Canons of Judicial Conduct.

him, but contends that the Zoning Board failed to prove that his tractors, trailers, trusses, roasters, and kitchen tables are junk or scrap prohibited by the ordinance. Because the zoning ordinance does not define junk or scrap, we must first determine their meanings, and then determine whether Saurer's property fits within the definition of junk or scrap.

There are certain things, although difficult to define, that fall within the realm of "we know them when we see them." Junk and scrap, like pornography, may be two of those things. See Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J. concurring) (I may never succeed in intelligibly further defining pornography, "[b]ut I know it when I see it ...."). Nonetheless, we must identify a concrete definition.

■ Words in a statute are to be given their common and ordinary meaning. Consolidated Coal Co. v. Indiana Dep't of State Revenue (1991), Ind., 583 N.E.2d 1199, 1201 (looking to Black's Law Dictionary, Webster's Dictionary and caselaw for the common and ordinary definition of income); Inman v. Farm Bureau Ins. Co. (1992), Ind.App., 584 N.E.2d 567, 569, trans. denied (looking to a statute for the common and ordinary meaning of renewal); Wesner v. Metropolitan Dev. Comm'n (1993), Ind.App., 609 N.E.2d 1135, 1139 (view meaning of a term given by the ordinary reader and community).

■ Though not defined by the zoning ordinance at issue in the present case, the term junk is defined in the Indiana Department of Transportation Act.[5] I.C. 8–23–1–26 states "[j]unk means old or scrap copper, brass, rope, rags, batteries, paper, trash, rubber debris, waste, or junked, dismantled, or wrecked automobiles or automobile parts, iron, steel, and other old scrap ferrous or nonferrous material." This statutory definition is consistent with the dictionary definitions. Black's Law Dictionary, Fifth Edition defines junk as:

Worn out and discarded material in general that may be turned to some use (citations omitted). Articles that have outlived their usefulness in their original form, and are commonly gathered up and sold to be converted into another product, either of the same or of a different kind; e.g. old iron, or other base metals, old rope, rags, waste paper, etc., empty bottles, and all articles discarded or no longer used as a manufactured article composed of any one or more of the materials mentioned.

Webster's Collegiate Dictionary, Tenth Edition defines junk as:

[P]ieces of old cable or cordage used esp. to make gaskets, mats, swabs, or oakum; old iron, glass, paper, or other waste that may be used again in some form; secondhand, worn, or discarded articles; clutter; something of poor quality; trash; something of little meaning, worth, or significance. . . .

Today, we adopt these common and ordinary meanings of the term junk. We also note that scrap and junk are terms used interchangeably to describe essentially the same things, except that scrap may more accurately describe smaller materials or fragments of rejected or discarded articles useful only for reprocessing.

### III. Aesthetics and Beauty

In support of its claim that Saurer is maintaining a junkyard on his real estate, the Zoning Board emphasizes Inspector Wakefield's opinion that Saurer's personalty is unsightly, and the opinions of Saurer's two neighbors, Ralph Scheller and Sharon Western, that Saurer's personalty is junk because it is not pleasant to view. This emphasis is not legally sound.

■ Because the Bartholomew County zoning ordinance limits the free use of real property, it is in derogation of the common law and must be strictly construed.[6] See

---

5. IND.CODE 8–23–1–26 (1993). Junk was defined identically in Indiana's former Junkyard Control Act, IND.CODE 8–12–1–3(a) (1982). However, I.C. 8–12–1–3(a) was repealed in 1990 and replaced with IND.CODE 8–23–20 et seq.,

which unfortunately failed to include the definition of junk.

6. However, reasonable zoning laws are a proper exercise of the government's police power, and

*Cooper*, at 447. We will construe the ordinance to favor the free use of land and will not extend restrictions by implication. *See Boyle v. Kosciusko County* (1991), Ind.App., 565 N.E.2d 1157, 1159.

Section 2 of the zoning ordinance states that the purpose of its provisions is to promote public health, safety, comfort, morals, convenience, and general welfare, but does not provide that the provisions are to preserve and enhance the scenic beauty or aesthetics of the area. Therefore, we will not imply such a purpose to further restrict the free use of land. An Indiana landowner has no duty to avoid interfering with his neighbor's scenic view. *See Justice v. CSX Transp., Inc.*, 908 F.2d 119, 122 (7th Cir. 1990); *Wolf v. Forcum* (1959), 130 Ind.App. 10, 161 N.E.2d 175, 178.

Moreover, courts cannot act as arbiters of proper aesthetics and good taste, and should not enjoin an activity solely because it causes some aesthetic discomfort or annoyance. *Wernke v. Halas* (1992), Ind. App., 600 N.E.2d 117, 122 (toilet seat and lid affixed to a piece of blue plywood with a painted brown spot and three small boxes surrounding it, all attached to a ten foot pole may be an aesthetic annoyance, but it is not a nuisance). Aesthetic values, which are inherently subjective, are the province of restrictive covenants.[7] *Id.*

Thus, although the opinions upon which the Zoning Board relies may be relevant, they are not controlling.

### IV. The Tractors

Saurer contends that because the Zoning Board failed to establish that his tractors are junk, the trial court's finding to that effect is clearly erroneous. Saurer further argues that he presented evidence that his tractors are not junk, but valuable antiques.

Saurer argues that Paul Vendebur, an expert witness on the appraisal and characterization of personal property, especially farm equipment, testified that Saurer's tractors are not junk. Vendebur stated that in his opinion junk is something that has no more use and should be taken to a smelter and made into something else. Vendebur stated that Saurer's tractors are very popular collector items worth $300 to $1,500 each. Vendebur also stated that tractors can sit outside for fifty to seventy years without deteriorating and that it is customary to keep tractors outside until they are restored. Saurer also stresses that James Wray, Chief Code Enforcement Officer for the Zoning Board, testified that in his opinion, the tractors are not junk because they are so valuable as antiques.

The Zoning Board argues that the trial court's finding is not clearly erroneous. In support, it argues that the tractors are old, rusty, inoperable, were not moved over the period of time Inspector Wakefield took the photographs, and that some have flat tires, are propped up by blocks, or are partially dismantled. According to Inspector Wakefield, Saurer's tractors are junk because they are nonusable, appear to be abandoned, have not been moved, and have been left sitting outside to deteriorate.[8] The Zoning Board also argues that just because Saurer may restore the tractors some day, does not prevent them from being junk today.

are not unconstitutional simply because they regulate the uses of private property. *Field v. Area Plan Comm'n of Grant County, Indiana* (1981), Ind.App., 421 N.E.2d 1132, 1139.

7. If landowners in a neighborhood or development wish to control the appearance of their area, they are free to contract among themselves to do so. *Wernke*, at 122. Given our myriad and disparate tastes, mores, attitudes, and life styles, courts are unable to provide a remedy for complaints involving aesthetics. *Id.* Moreover, it is well settled throughout the country that unsightliness or lack of aesthetic virtue alone does not

constitute a private nuisance. *Id.* That a plaintiff may not recover damages for mere annoyance or inconvenience of his neighbor's distasteful outdoor decorations is in recognition of the fact that life is not perfect. *Id.*

8. The Zoning Board further argues that Saurer did not present any evidence that the tractors were usable in their present condition. This argument is without merit. It was the Zoning Board's burden to prove that Saurer's property is junk or scrap prohibited by the zoning ordinance. *See Goodman*, at 1285. Saurer did not have to prove that his property is not junk.

Under the definition of junk adopted above, we are firmly convinced the evidence supports a conclusion opposite the trial court's decision. Saurer's tractors are not junk prohibited by the zoning ordinance. The tractors have not outlived their usefulness, they are not waste, valueless refuse, or fit only for recycling. Rather the tractors have a distinct value as collector's items. Additionally, simply because Saurer stores his tractors outside does not mean that he has discarded them as worthless waste, for tractors are ordinarily kept outside. Saurer's tractors are not scrap machinery or scrap vehicles for the above reasons, and because they are still of enough worth to retain, and their usefulness is not limited to materials for reprocessing.[9] The trial court's finding that Saurer's antique tractors are junk is clearly erroneous.

## V. Building Trusses

Saurer contends that the Zoning Board failed to prove that his twenty-seven building trusses are junk. He argues that the trusses are worth $100 each, have been treated for termites, and are stored under a tin roof to keep them from deteriorating until he is financially able to proceed with building his barn. Saurer also points out that Officer Wray testified that the trusses did not violate any county ordinance, but that he thought they should be moved simply because they are unsightly.

The Zoning Board contends that the trusses are junk because they have been sitting unused in the same spot for six years, Saurer has no definite timetable for constructing a building with them, and Saurer allows grass and weeds to periodically grow around them.

The record shows that the trusses are fit and useful in their present form as construction materials, they have considerable value, and Saurer has not discarded them as waste, but has taken measures to ensure that they remain fit for their original construction pur-

pose. Additionally, the photographs provided by the Zoning Board also demonstrate that the trusses are not unsightly or offensive to view. The trusses, as covered by the tin roof, form a barn-like building, similar to other barns in the area, albeit on a much smaller scale. The trial court's finding that the trusses are junk is clearly erroneous.

## VI. Semi–Trailers

Saurer contends that if the trial court's injunction requiring the removal of junk or scrap vehicles includes his two semi-trailers, it was an abuse of discretion. He argues that the zoning ordinance does not require vehicles parked on his property to be licensed and operable; and therefore, his semi-trailers are not scrap vehicles or junk. Officer Wray agreed that there was no county ordinance applicable to Saurer's trailers.

Zoning Board Inspector Wakefield argues that the semi-trailers are junk because they are unlicensed, and thus, inoperable and unusable. Wakefield, nonetheless, recognizes that the zoning ordinance does not require vehicles or trailers to be licensed. The Zoning Board also stresses that Saurer has not moved the trailers in years and that he uses them to store other junk.

A Zoning Board may not on an ad hoc basis impose a condition or requirement not contained in the zoning ordinance. *Ayers v. Porter County Plan Comm'n* (1989), Ind.App., 544 N.E.2d 213, 219–20. In the present case, the Zoning Board attempted to require Saurer to license and keep operable the semi-trailers and vehicles on his property, or risk having them condemned as junk. Such a requirement is not contained in the zoning ordinance, and thus, Saurer was not required to comply with it.

Additionally, the semi-trailers remain useful for holding and hauling materials, have not been discarded, and are valu-

---

**9.** Saurer's tractors are unlike the scrap automobile parts and inoperable, wrecked automobiles which the Freemans accumulated over a twenty-four-year period and then discarded outside their residence and the residence of Mrs. Freeman's mother in *Board of Zoning Appeals of Bartholomew County v. Freeman* (1982), Ind.App., 437 N.E.2d 1035, 1036–41. Saurer has not discarded or abandoned his tractors, but stores them outside out of necessity and practicality as do many farmers in rural areas. Moreover, the value of Saurer's tractors is not as scrap or reprocessing material, as was the case with the Freeman's property, but as collector's items.

able as trailers. The fact that Saurer stores miscellaneous items (some of which may be junk), in the trailers while they are parked on his property does not automatically convert the semi-trailers themselves into junk. To the contrary, this demonstrates that the trailers have not outlived their usefulness for holding and hauling materials. The semi-trailers are not junk, and the trial court's finding to the contrary was clearly erroneous.

### VII.  Roasters and Kitchen Tables

Saurer contends that the roasters and stainless steel kitchen tables which he has used seasonally for eight years in his hog roasting business are not junk. Saurer asserts that he stores the roasters and tables outside during the off-season because he does not have sufficient indoor storage space. He notes that he paints them annually to prevent them from deteriorating. Expert Vendebur also testified that they are not junk and are usable in their present state. Saurer also points out that Officer Wray testified that there is no county ordinance which prohibits Saurer from storing his hog roasting equipment on his property.

The Zoning Board argues that the hog roasters are junk because they are not commonly found on residential or commercial property, they appear to be abandoned, and because Inspector Wakefield never saw them being used or moved. It argues that the kitchen tables are also junk because Inspector Wakefield never saw them being used, they are piled on the side of a building, and vegetation is allowed to grow around them.

Simply because Saurer stores his hog roasters and kitchen tables outside during the off-season and periodically allows some vegetation to grow around them does not make them junk. Saurer must store them outside because he does not have sufficient storage space indoors. The vegetation which can be seen around the roasters and tables in the zoning board's photographs is no more than that which could be seen growing around a pleasure yacht stored on someone's property during the fall and winter months. Moreover, the roasters and tables are equipment used in Saurer's ongoing hog roasting business. They have not outlived their usefulness, but remain fit for roasting. Just because Inspector Wakefield did not see the roasters and tables being moved or used does not mean that Saurer has discarded or abandoned them as junk. Saurer continues to use the roasters and tables on a seasonal basis in his hog roasting business and takes precautions to protect them from the elements. The trial court's finding that these items are junk is clearly erroneous.

### CONCLUSION

We are unable to salvage the trial court's findings that Saurer's antique tractors, semi-trailers, trusses, roasters, and kitchen tables are junk or scrap, for these findings are clearly erroneous. The trial court abused its discretion in granting the mandatory injunction ordering Saurer to remove these items as junk from his property. We therefore reverse the trial court and order dissolved that portion of the injunction relating to the five items of personalty cited above. The remaining unchallenged portion of the injunction remains in full force and effect.

Judgment reversed.

SHARPNACK, C.J., and NAJAM, J., concur.